(No. 31113.-

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CAROL MACBETH, Plaintiff in Error.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

CRAMPTON and SIMPSON, JJ., dissenting.

BESSE & BESSE, of Sterling, and FRANKLIN J. STRANSKY, of Chicago, (ROBERT W. BESSE, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN L. POOLE, State's Attorney, of Fulton, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Carol MacBeth, was indicted in the circuit court of Whiteside County, for burglary, larceny and receiving stolen property. She entered a plea of not guilty and after waiving a trial by jury, was found guilty by the court of receiving stolen property as charged in the indictment. After motions for a new trial and in arrest of judgment were overruled, plaintiff in error was sentenced to the Illinois State Reformatory for Women to serve a term of not less than two nor more than five years.

On June 3, 1948, the restaurant of one Morgan Jul was burglarized, and a tear-gas gun, a portable typewriter and a cash register were stolen. The stolen articles were found in the dwelling of Carol MacBeth by police officers who searched the premises on September 8, 1948, over three months after the alleged burglary. The officers testified that Carol MacBeth permitted them to enter her premises for the purpose of searching for stolen property, after being requested to do so in connection with the arrest of one Emery Lounsbury. The cash register and the portable typewriter were found on the second floor of the MacBeth home.

The tear-gas gun was found in a drawer of a chest in plaintiff in error's bedroom on the first floor. Also in her bedroom were articles of men's wearing apparel, some of which were in the chest of drawers. At the time of the search plaintiff in error told the officers that the stolen articles belonged to Lounsbury. On the trial, evidence was also offered concerning the theft of a traveling bag, a humidifier and a $750 console radio, which were also found on the premises. The console radio was new and still had the price tag attached to it. It was found in the first-floor bedroom of plaintiff in error and was covered with a blanket.

Plaintiff in error was charged in the indictment under which she was found guilty, with buying, receiving and aiding in concealing one portable typewriter of the value of $80, one cash register of the value of $200, and one pen type tear-gas gun of the value of $5.

The record discloses that at the trial plaintiff in error explained the presence of the variety of the articles in her home by stating that Lounsbury was engaged in the business of trading and exchanging such articles. She made the claim that none of the articles belonged to her except a traveling bag which she claimed she purchased from Lounsbury.

It is apparent from the record that Lounsbury, while he maintained a sleeping room elsewhere, spent much of his time at the home of plaintiff in error, who was employed by the Illinois Public Aid Commission as a case worker and was away from home during business hours, usually from 8:00 in the morning until about 5:30 in the evening. Lounsbury was likewise employed, but it appears that he was at the home of plaintiff in error in the afternoons when deliveries of articles by express and parcel post were made to her house.

At the time of the trial plaintiff in error was a divorcee and was thirty-six years of age. She was well educated

and had held positions of trust and confidence, including work in the Bond Department of the United States Treasury and at the Green River Ordnance Plant near Sterling, Illinois, and for the Illinois Public Aid Commission with offices in Morrison. She had, for eight years prior to her arrest, lived in a dwelling house in Sterling, which belonged to her father. In 1945, she became acquainted with Emery Lounsbury, who was a parolee from a State penitentiary. The acquaintance between Lounsbury and plaintiff in error was close and intimate. Lounsbury was unmarried and, although he maintained a room in Sterling, much of his time was spent at the home of plaintiff in error. There he kept many of his clothes. Plaintiff in error prepared his evening meal and he furnished and paid for the groceries. He had a key to the house and had full access to the home, using it as if it were his own. Plaintiff in error owned and maintained an automobile which was also used by Lounsbury, almost exclusively. It is apparent from the evidence that plaintiff in error was infatuated with Lounsbury and that he was exercising supremacy and direction without restraint in their relationship.

The evidence reveals without question that Lounsbury was conducting a business from the home of plaintiff in error, consisting of bartering, repairing, buying and selling for profit electrical equipment and many items of personal property. Lounsbury advertised in what might be called a swapper's trade magazine and in the course of his business many packages were delivered through the medium of the parcel post and railway express agency to Lounsbury at the home of plaintiff in error. Deliveries averaged one or two times a week and some of the packages were marked "firearms" and some were marked "radios." It was disclosed clearly from the evidence that deliverymen from the express agency and parcel post made frequent deliveries to plaintiff in error's home, but that at no time did they ever

see plaintiff in error about the premises. It was further revealed that Lounsbury personally took many packages to the railway express agency for shipment to other places. In plaintiff in error's home Lounsbury occupied the basement as a workroom, where his tools were kept. The first floor consisted of a kitchen, living room and bedroom, and was occupied and used by plaintiff in error for sleeping purposes and preparation of meals for herself and Lounsbury. The second floor was used by Lounsbury for storage of articles which were claimed to be used by him in his swapping and exchange business.

It appears from the evidence that Lounsbury would call each morning at plaintiff in error's home and have coffee with her. He would then drive her car to his work or, if plaintiff. in error needed the car, she would take him to his work. After work he would return to plaintiff in error's home and remain in the evening until about 10:00 P.M., at which time he would take her car and go to his room. On September 8, 1948, while plaintiff in error was waiting for Lounsbury to quit work for the day at the plant where he was employed, she was approached by the Chief of Police of Sterling who advised that her "boyfriend" was in jail and that there were some articles which he said were in her house and that "We [meaning himself and other officers] would like to have her take us to the house to get those articles." Plaintiff in error said she would be glad to do it and inquired why Lounsbury was in jail. She then drove the sheriff and the chief of police to her home, opened the door and invited the officers to come in. The house was searched and many articles of personal property were found on the second floor. While the officers were there plaintiff in error was interrogated in an attempt to discover who the property belonged to. The chief of police testified that plaintiff in error tried to help them and was co-operative with the officers. She testified she did not believe the property was stolen, that she thought Lounsbury had taken

it in on trade, that she considered the property was his and that she had nothing to do with the business of buying, selling and swapping the various articles. She testified further that she had nothing to do with the cash register and did not know that the typewriter was in the house. It is apparent from the evidence that, as far as the second floor was concerned, it was used by Lounsbury and he had control over the property as well as the storage space.

To sustain a conviction of receiving stolen property the property must be identified as stolen, the person charged must be shown to have received it, or aided in concealing it, knowing it was stolen, and to have received it for his own gain or to prevent the owner from again possessing it. (*People* v. *Mulford,* 385 Ill. 48; *People* v. *Rife,* 382 Ill. 588.) It is also indispensable that it be established beyond a reasonable doubt that the property mentioned in the indictment was, in fact, stolen by a person other than the one charged with receiving the property. *People* v. *Devore,* 402 Ill. 339; *People* v. *Harris,* 394 Ill. 325.

In citing the *Mulford case* the People urge that knowledge that goods were stolen may be inferred from all surrounding facts and circumstances, and point to the testimony as to what the officers found on the second floor of plaintiff in error's home where 800 to 1000 articles of personal property were found, such as electric fans, an electric roaster, chisels, saws, etc. It is true that knowledge that goods were stolen may be inferred from all surrounding facts and circumstances involved, but the circumstances here, as we have heretofore pointed out, reveal that deliveries of express and parcel post packages and shipments were frequently made to plaintiff in error's home, and that at no time was plaintiff in error in or about the premises. The evidence disclosed that Lounsbury was conducting a business from the home of plaintiff in error consisting of bartering, buying, repairing and selling just such articles as the People point to, which they contend were circum-

stances that infer guilty knowledge that the goods were stolen. It also appears that Lounsbury was using the second story as well as the basement without any direction or supervision by plaintiff in error.

Where circumstantial evidence, alone, is relied upon to prove guilty knowledge in receiving stolen property, the circumstances, when considered together, must point clearly and conclusively, beyond a reasonable doubt, to the fact that the defendant knew the goods had been stolen at the time he received them and must exclude every reasonable hypothesis other than that of guilt. (*People* v. *Rubin,* 361 Ill. 311.) At page 329 of the case cited, we said, "The defendant's willingness to permit his premises to be searched and his assistance therein are circumstances tending to show lack of guilty knowledge."

It is true the relationship here, as disclosed by the record, cannot be too strongly condemned, but the weakness and frailty of human nature is too well known to say that plaintiff in error would exercise too much judgment in scrutinizing the transactions of Lounsbury, who had taken complete charge of her home, her automobile and her time. Under the circumstances here, it is logical to suppose that his representations to her as to his ownership of the property were never questioned. Aside from this weakness there is no direct evidence that plaintiff in error knew the goods were stolen. The proof upon this essential element is by circumstantial evidence. This is overcome by the following: (1) Plaintiff in error's willingness for the officers to search her home; (2) her co-operation and frankness with the investigating officers; (3) absence of evidence that she ever exercised any control over, or had the exclusive possession of, the chattels, ever received any information as to the true source of the articles, made any disposition of them or had any connection with the business of bartering or trading the merchandise; and (4) her failure to claim any of the merchandise as her property, stating at the

time of the original search that the property belonged to Lounsbury.

In the case of *People* v. *Sheppard,* 402 Ill. 347, we said, "In criminal cases it is the duty of this court to review the evidence, and, if there is not sufficient credible evidence, if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. (*People* v. *Willson,* 401 Ill. 68; *People* v. *Holt,* 398 Ill. 606; *People* v. *Bradley,* 375 Ill. 182; *People* v. *Kazmierczyk,* 257 Ill. 592.)"

While in the instant case there are many facts and circumstances tending to create the suspicion that plaintiff in error is guilty, there are also many circumstances which tend to establish her innocence, and we do not think her guilt has been sufficiently proved to the degree required by law. For that reason, the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*

Mr. JUSTICE CRAMPTON, dissenting:

I am constrained to dissent from the majority view. Plaintiff in error contends that the evidence fails to show that she actually received or aided in concealing any of the articles described in the indictment. The evidence shows conclusively that the dwelling house belonged to plaintiff in error and that she had resided therein for about eight years. While it appears that Lounsbury had free access to the premises, it does not appear that he was a tenant or had exclusive possession of, or control over, any part of the premises. Under such circumstances, plaintiff in error cannot escape responsibility for the presence of the stolen articles on her premises by claiming that they were in the possession of someone else. It is enough if the accused has control over the property even in the hands of the thief. (*People* v. *Poncher,* 358 Ill. 73.) Joint

possession of stolen property with the thief has been held to be sufficiently exclusive to sustain a conviction for receiving stolen property. *People* v. *Calcione,* 369 Ill. 154.

The next contention of plaintiff in error is that the evidence fails to show that she had any knowledge that the articles found in her home had been stolen. The applicable rule was stated in the early case of *Huggins* v. *People,* 135 Ill. 243, at page 246, where it was said, "It rarely happens that direct and positive proof of the guilty knowledge is attainable, unless the thief be produced for that purpose. It is therefore, ordinarily, to be shown by proof of attending facts and circumstances, from which, by the common understanding and experience of men, the inference of the fact arises. Thus, numerous circumstances may be shown, as, that the purchase was for much less than the real value; that the defendant denied that the property was in his possession, or concealed it; his failure to make reasonable explanation; the evil reputation of the person from whom purchased or received, and the like."

The evidence shows that plaintiff in error was well aware that Lounsbury had previously violated the laws of this State and was then on parole from the penitentiary. The fact that she then permitted Lounsbury to bring a variety of articles into her home, such as cash registers, type-writers, humidifiers, expensive radios, and the like, is a circumstance to be taken into consideration in determining the question of her guilty knowledge. Her explanation that Lounsbury was engaged in the business of "swapping" secondhand personal property would have been more credible had it been made spontaneously to the police officers at the time of the search of her premises, rather than at the trial some months later. Another circumstance tending to show guilty knowledge on the part of plaintiff in error was her explanation that the blanket in her bedroom covered an old Philco radio being repaired by Lounsbury, when in fact it covered a new, expensive console radio with the price

tag still attached. The presence of other stolen articles on the premises together with the continuous close personal relationship between plaintiff in error and Lounsbury were also factors tending to show guilty knowledge.

A careful review of the facts and circumstances in evidence discloses no reversible error was committed by the admission in evidence of other stolen property, because it was received from the same person as the property described in the indictment, which continuous dealing between the same parties tends to show guilty knowledge. *People v. Niles,* 300 Ill. 458; *Lipsey v. People,* 227 Ill. 364; *People v. Kasallis,* 385 Ill. 158.

The judgment of the circuit court of Whiteside County should be affirmed.

Mr. JUSTICE SIMPSON joins in the foregoing dissenting opinion.