THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CHESTER HARRY DOLLEN, Appellant.

*Opinion filed November 30, 1972.*

MURPHY, GRIFFIN & DIXON, of Aurora (EUGENE G. GRIFFIN, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield (JAMES B. ZAGEL and E. JAMES GILDEA, Assistant Attorneys General, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County, defendant was convicted of the unlawful sale of a narcotic drug and sentenced to the penitentiary for a term

of 10 to 12 years. The appellate court affirmed his conviction but remanded the cause for redetermination of sentence. (*People v. Dollen, 2 Ill. App. 3d 567.*) We granted defendant's petition for leave to appeal.

It is undisputed that on February 5, 1969, defendant sold a package which contained morphine to a State narcotics agent for $75. He was arrested on February 19, 1969. Instrumental in effecting this purchase was an informer, Donald Wright, who worked as a cab driver for the company which was managed by defendant.

Agent Norton of the Illinois Bureau of Investigation (Narcotics Division) testified that on February 5, 1969, he and Wright went to the cab garage. Defendant met them and then departed. He returned a short time later with a package which was "about three inches by three inches square." It contained several small vials of liquid. Norton gave defendant $65 in prerecorded currency. This amount had previously been suggested to him by Wright. However, defendant demanded and received an additional $10. Norton claimed that during the sale he requested other drugs and defendant said he could supply them, although it is apparent that no subsequent purchases were made. He further testified that Wright had told him of his prior stay in a mental institution and that he gave $50 to Wright because the latter wanted to leave town. Norton, who had met Wright only one or two weeks before the sale, also stated that he did not know of his present whereabouts.

Detective Edward Williams of the Aurora Police Department, who was in charge of narcotics, testified that he had known Wright for approximately five days prior to the sale. He described Wright as his informant. On February 5, 1969, he observed Norton and Wright meet defendant at the cab station and enter the building. Williams further testified that several weeks after defendant was arrested, Wright asked him for money but was referred to Norton. The detective stated that he first learned of Wright's past mental history several months

later during a telephone conversation with a member of Wright's family. The purpose of his inquiry was to discover where Wright had gone, but he was unable to determine his whereabouts, although he later saw Wright about eight months prior to defendant's trial, which was held in June, 1970.

Defendant testified that Wright had been hired as a cab driver in the latter part of January, 1969. He stated that animosity existed between them because of Wright's improper conduct toward several passengers. Defendant further claimed that he told Wright that he would be discharged if these accusations were true.

He also testified that on or about January 28, 1969, he arrived at the cab garage and saw Wright and another employee, Elmer Davis. A cab dispatcher, who was in the garage office, was the only other person present at that time. During a routine inspection of the garaged vehicles, defendant discovered the package of narcotics in Wright's cab and Wright immediately stated that he could find a buyer. Defendant claimed that for several days after the discovery Wright repeatedly asked him to sell the package but he refused because he believed it would be claimed by a passenger. Finally, he stated that he acceded to these requests when Wright, whom he described as being in an emotional condition, said that he was in trouble and defendant could help him by selling the narcotics to a buyer that Wright could produce. Wright suggested the sale price of $75 which defendant could keep for his services. Defendant also maintained that Wright was aware of his substantial indebtedness.

Elmer Davis testified that he arrived at the garage on the morning defendant discovered the package and saw Wright standing near the vehicles. He corroborated defendant's version of the discovery and Wright's immediate offer to obtain a buyer for the package. He further testified that ill feelings existed between Wright and defendant.

The evidence discloses that Wright was discharged on

February 6, 1969. Davis stated that several days later he was present when Wright told defendant that he had received money from the State and he could "blow the lid off" (presumably quash the matter) if defendant would re-hire him. This offer was refused.

Richard Pass, another employee, testified that on February 6, 1969, the informer told him he had "fixed" defendant. This witness also substantiated the fact that animosity existed between Wright and defendant. On this day Wright also told defendant's employer that she should find a new manager because defendant, who had worked for her company for about six years, had sold narcotics to a State agent and he would soon be arrested.

At the time of trial Wright was unavailable. Defendant filed a motion to compel the State to produce all documents signed by Wright which pertained to the case and "all records of the Illinois Division of Narcotics" relative to him. The trial court ruled that it would order disclosure only if Wright testified.

Based upon the aforementioned facts defendant now contends that he was entrapped; that the State's payment of $50 to Wright for the admitted purpose of leaving the area was prejudicial; and that the trial court erred in denying his motion which sought information concerning Wright.

Entrapment is a valid affirmative defense if established by the evidence. (*People v. Lewis, 26 Ill.2d 542, 545; People v. Outten, 13 Ill.2d 21, 24.*) "[W]here it appears that officers of the law or their agents have conceived and planned a criminal offense and have incited, induced, instigated or lured the accused into committing an offense which he would not otherwise have committed and had no intention of committing, entrapment is established and no conviction may be had. [Citations.] On the other hand, entrapment is not available as a defense to one who has the intent to commit the crime and does so merely because an officer of the law, for the purpose of securing evidence,

affords such person the opportunity to commit a criminal act, or purposely aids and encourages him in its perpetration." *People v. Hall, 25 Ill.2d 297, 300, cert. denied, 374 U.S. 849, 10 L. Ed. 2d 1069, 83 S. Ct. 1912;* see also Ill. Rev. Stat. 1969, ch. 38, par. 7—12.

"[T] he State must be responsible for the actions of their informer *** when the defense of entrapment is raised." *(People v. Strong, 21 Ill.2d 320, 326.)* In *Strong,* we held that a conviction for the unlawful sale of narcotics cannot stand when the informer supplies the drugs. (See also *United States v. Bueno (5th cir. 1971), 447 F.2d 903.*) If defendant presents some evidence to raise the issue of entrapment, "the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all other elements of the offense." Ill. Rev. Stat. 1969, ch. 38, par. 3—2(b).

In the present case the testimony of defendant and Elmer Davis clearly indicates that defendant innocently gained possession of the narcotics during a routine inspection of the vehicle driven by Wright. Defendant apparently had no prior history of narcotics involvement until this time. Wright, who immediately after the discovery suggested that he could find a buyer, also possessed an unparalleled opportunity to place the package in his vehicle. Moreover, the testimony of agent Norton and defendant confirms that Wright actively negotiated the price of the narcotics. It was also definitely established that at the approximate time of the discovery of the drugs Wright harbored resentment against the defendant.

We do not imply that any law-enforcement official was involved in a plan to place the narcotics in the vehicle, but we believe that the totality of the evidence was sufficient to indicate that Wright, acting independently, may have deposited the package so as to result in its detection by defendant, thus establishing the possibility of entrapment. The State, for example, may have easily rebutted defense testimony concerning the manner in

which the drugs were found or the inference of their possible source by calling the informer to testify. However, it chose not to, explaining that Wright had disappeared, and simply relied upon the testimony of police officials which primarily related to the actual sale.

The only testimony which might detract from the facts related to the discovery of the package was that of agent Norton which indicated that defendant offered to procure other drugs. While the defendant substantiated that he made such offer, he explained that Wright had told him to say this. In view of defendant's explanation and the substantial lapse of time between discovery of the package and its eventual sale, we do not believe that this detracts from the inference that Wright supplied the drugs.

We conclude that no evidence was presented to refute defense testimony and establish beyond a reasonable doubt that defendant was not entrapped into the commission of the offense charged as in *Strong.* Since this determination is dispositive of this appeal, we need not consider the other issues presented by defendant.

For the aforementioned reasons the judgments of the appellate court and circuit court of Kane County are reversed.

*Judgments reversed.*