RUSSELL FELKER AND FRANK ENGEL *v.*
STATE OF ARKANSAS

5815                                    492 S.W. 2d 442

Opinion delivered April 9, 1973

*Charles E. Davis* and *Sam Robinson,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Gene O'Daniel,*
Asst. Atty Gen., for appellee.

CARLETON HARRIS, Chief Justice. This is a case of first
impression in this state. Appellants, Russell Felker and
Frank Engel, were convicted in the Washington County
Circuit Court of receiving stolen property, such property
consisting of musical tapes and a tape player. The jury
fixed the punishment of each at eighteen years confine-
ment in the Arkansas Department of Correction. From the
judgment entered in accordance with the verdict, appel-
lants bring this appeal. For reversal, three points are
asserted, but since we find Point Three to be dispositive
of the case, there is no need to discuss the first two points.
Appellants' third point is that the evidence shows con-
clusively that no crime was committed by either defen-
dant.

To understand the contention, it is necessary that we review the evidence. Gary Sidman, twenty-three years of age, testified that he broke into a Firebird automobile on the Wal-Mart parking lot in Springdale and took from the automobile a tape player and some tapes. He testified that this was his own idea, but he needed money and he knew he could sell the tapes at the Trade Winds Motel in Springdale to Frank Engel, further testifying that he had sold "other stuff" to that appellant. Sidman then testified:

> "Well, Frank told me that I could sell them this stuff on Saturday and this was the first of the week. Between the first of the week and Friday, I was arrested and when I told Sgt. Swearingen what I—you know, what my intentions were—anyway it worked around to that the highway patrolman was to go with me on Saturday. We went down Saturday morning, and Mr. Engel said he didn't have the cash to buy all the stuff."

This testimony had reference to the fact that after Sidman was arrested, admitted the theft, and the property had been recovered by the police, arrangements were made by the police department for a state trooper, Larry Imboden, who was stationed at Lonoke, to go to Springdale and act in an "undercover" capacity. Accordingly, Imboden went to the Springdale Police Department on the morning of December 12, 1970, met Sidman, and the two shortly before 2:00 P.M., went to the Trade Winds Motel, Imboden being in plain clothes. After drinking beer, and sitting around in the lounge for a while, they went into the kitchen area and met Engel. The officer then testified:

> "We was to sell him some tape players [1] that we had in a sack in a vehicle outside. We priced them and told him that we had the tape players and that the price, which was agreed on prior, which was $15.00 a tape player, I believe, something like that, and he said he didn't have the money at the time. He said he'd offer me $10.00 as down payment on them and get the

---

[1] The plural evidently has reference to some stolen property that Sidman had obtained from a man in Rogers, Sidman testifying that he knew this property was also stolen.

money later and I refused to take the $10.00 at the time because we didn't figure it was enough for us. He said if we would come back later—approximately three o'clock, he would have someone who would probably give a hundred dollars for the whole merchandise, so we left—came back around two-fifty. He told us to go to Room 126 in the Trade Winds and that the man there would buy the merchandise from us. We went to the room and knocked on the door. Mr. Felker came to the door. I told him that we had the stolen merchandise, stolen tape players, in the back of the car, and he told me to bring them inside and I did, and set them down by the mirror on the dresser. He pulled out a hundred dollar bill and gave it to me, and I, in turn, pulled my pistol on him and pulled my identification out at the same time, and I placed him under arrest, put him against the wall and searched him for weapons."

The officer testified that both men were told that the property was stolen property and this testimony was corroborated by Sidman.

The purchase was admitted by appellants, Engel testifying that Sidman had been "hanging around" the Trade Winds, stating that he (Sidman) was very much in need of money and that he owned a couple of tape players and some tapes that he would like to sell. Engel said that on the Saturday afternoon when Sidman and Imboden came to the Trade Winds, the two stated that the property had not been stolen and when Felker later came in, he (Engel) asked if the former would like to buy them and Felker replied, "If you are sure they are not stolen." Engel said that Felker said he would give $100.00 for them. Thereafter, Engel sent the two to Felker's room.

Felker testified that he had told Engel that if the equipment was the right price, not stolen, and in good shape, he would purchase same and Engel replied, "Well, they tell me they are not stolen"; he went on to his room and later the telephone rang, answered by his wife, and she turned to Felker and said, "Frank said to give the boy $100.00." The purchase was then made.

Appellants argue that due to the fact that the property

had been recovered by the police[2] before it was sold, such property had lost its character as stolen property, and they accordingly could not be guilty of the offense of which they were convicted. This argument must be sustained. The question has been passed upon in several jurisdictions, and the unanimous holding is that, under the circumstances we have set forth, one cannot be guilty of receiving stolen property. In fact, the Attorney General cites no cases to the contrary and our own research has produced none. One of the earliest cases that dealt with this subject was the 1906 New York case of *People* v. *Jaffe*, 78 N.E. 169. Although the case deals with the actual offense of attempting to receive stolen property, a portion of the discussion deals with the substantive offense. In its discussion, the court said:

> "In passing upon the question here presented for our determination, it is important to bear in mind precisely what it was that the defendant attempted to do. He simply made an effort to purchase certain specific pieces of cloth. He believed the cloth to be stolen property, but it was not such in fact. The purchase, therefore, if it had been completely effected, could not constitute the crime of receiving stolen property, knowing it to be stolen, since there could be no such thing as knowledge on the part of the defendant of a nonexistent fact, although there might be a belief on his part that the fact existed."

In the 1935 case of *Farzley* v. *State*, 163 So. 395, the Supreme Court of Alabama stated:

> "But it is essential to the crime here charged that the goods received by defendant were stolen and retained that status until they were delivered to defendant. If they were stolen, they continued to be stolen goods until they were recovered by their owner or some one for him."

There is a lucid discussion by the United States Court of Appeals (Third Circuit) of the subject in the 1958 case

---

[2]Fred Champlin had identified a player and tapes as belonging to him, having been taken from his Firebird Pontiac while it was parked at Wal-Mart in Springdale. This property was subsequently returned to Champlin by the police, and these facts were recited by the witness in his testimony at the trial.

of *United States of America* v. *Cawley,* 255 F. 2d 338. There, Cawley was convicted of buying parcel post packages stolen from the United States mail, knowing that they were stolen, and of possession of the stolen packages. The conviction was appealed and the opinion sets out the facts upon which Cawley was convicted, and the holding of the court, as follows:

> "The facts which led to defendant's arrest were these. On March 27, 1957, two thieves were apprehended in the process of stealing a number of parcel post packages from the United States mail. The thieves had taken the packages from a railroad conveyor belt and had hidden them in an underground passageway. It was while they were removing the packages from their secret hiding place that the thieves were detected by the postal inspectors.

> "After the arrest of the thieves, the postal inspectors took them and the packages to the post office. The packages were opened and their contents checked. Upon interrogation of the thieves the inspectors discovered that they had intended to sell the contents of the stolen parcels to defendant Cawley. The inspectors then requested cooperation of the thieves to continue their original design and to contact defendant to make the sale. The thieves agreed. They approached defendant with the goods, and defendant purchased them under circumstances which would justify the inference that he thought the goods were stolen.

> "The only question for resolution by this court is whether at the time defendant purchased the goods they had lost their character as stolen goods by reason of their previous recovery by the postal inspectors.

> "The government agrees, as indeed it must, that it is a legal principle of long standing that when stolen goods are recovered by the owner or his agent before they are sold, the goods are no longer to be considered stolen, and the purchaser cannot be convicted of receiving stolen goods. The rule was recognized by this court in *United States* v. *Cohen,* 3 Cir., 1921, 274 F. 596, 599:

'* * * When the actual, physical possession of stolen property has been recovered by the owner or his agent, its character as stolen property is lost, and the subsequent delivery of the property by the owner or agent to a particeps criminis, for the purpose of entrapping him as the receiver of stolen goods, does not establish the crime, for in a legal sense he does not receive stolen property.' "

See also *Copertino v. United States*, 3 Cir., 1919, 256 F. 519.

"The government urges that it is essential to the rule set forth above that the goods, to lose their stolen character, must be recovered by the owner or his agent. It is argued in this case that since the railroad was carrying the United States mail and the United States postal inspectors are not the agents of the railroad, the goods retained their stolen character even after having been recovered by the postal inspectors. With this we cannot agree. If it is necessary that goods be recovered by the owner's agent, then *the postal inspectors here, recovering parcels stolen from the United States mail, are agents for the owner regardless of the fact that the railroad is the carrier for the postal department.* [Our emphasis][3] The rule that goods cease to be stolen if recovered by the owner or his agent means that such goods cease to be stolen if recovered by the owner or anyone who has a right to possession or control over them (Citing case). Here the postal inspectors certainly had a right to possession of the parcel post packages. It is in fact

---

[3]The same argument was presented in *People v. Rojas* (hereafter cited) and rejected. From the opinion:

"The People would have us go farther and hold that the evidence here supports the finding that defendants are guilty of the consummated offense of receiving stolen property. In this regard the People advance two theories. The first is that the goods, when they came into the hands of defendants, had not lost their stolen character because Officer Saville, the 'undercover man,' was acting as 'agent' of the city and not of the true owner. We believe that both the owner and the police would take unkindly to the suggestion that property which has been the subject of larceny and has then been recovered by law enforcement officers remains 'stolen' while it is under the surveillance of the police. It seems obvious that stolen property, recaptured by the police, no longer has the status of stolen goods but, rather, is held by the police in trust for, or for the account of, the owner."

their explicit duty to recover packages stolen from the United States mail. When the inspectors took possession of the packages, the goods ceased to be stolen, and the subsequent purchase of the goods by defendant Cawley, even though he thought they were stolen, did not violate Section 1708 of Title 18."

Under the cited reasoning, the court reversed the conviction.

See also the 1961 California case of *People* v. *Rojas*, 358 P. 2d 921, where the State unsuccessfully contended that because the thief stole the property pursuant to pre-arrangement with defendants, the crime of receiving stolen property was completed.

One of the most recent cases is the Oklahoma case of *Booth* v. *State*, 398 P. 2d 863 (1965), where the Oklahoma Court of Criminal Appeals reached the same conclusion,[4] citing 76 CJS Receiving Stolen Goods, § 5, Page 7, as follows:

"In order to convict of receiving stolen goods, the goods in question must have retained their stolen character at the time they were received by accused; if they were stolen, they continue to be stolen goods until they are recovered by their owner or some one for him. Hence, where the actual physical possession of stolen goods has been recovered by the owner or his agent and afterwards carried to the receiver either by the original thief or the instrumentality through which the thief originally intended to convey it, at the express direction of the owner or his agent, for the purpose of entrapping the receiver, his receiving of the goods is not a receiving of stolen goods."

As previously stated, no case holding contrariwise is cited by the State, and we know of no case where a con-

[4]In *Booth*, as well as *People* v. *Jaffe*, *supra*, the actual offense for which the defendant was tried, was an attempt to receive stolen property. In both instances, the court held that that offense had not been committed on the rationale that one cannot be convicted of an attempt to receive stolen goods if he could not be guilty of receiving stolen goods. In *People* v. *Rojas*, *supra*, the conviction was for receiving stolen property. The Supreme Court of California, on the basis of the fact that the property, after its recovery by the police, had lost its character as stolen property, reversed this conviction, but on the basis of a California statute, held that the defendants were guilty of an attempt to receive stolen property.

trary ruling was rendered. The law appears to be settled that when stolen property is recovered, it loses its character as stolen property, and one purchasing such goods thereafter cannot be guilty of the offense of receiving stolen property.

Reversed.