JUSTICE TRAPP delivered the opinion of the court: Following a bench trial, defendant Lucille Frazier was found guilty of theft of a typewriter having a value in excess of $300. (Ill. Rev. Stat. 1981, ch. 38, par. 16 — 1.) Judge Robinson sentenced her to one year’s probation and ordered that she pay court costs. Defendant appeals from the judgment of the circuit court of Vermilion County. We reverse. The single issue raised on appeal is whether defendant was proved guilty beyond a reasonable doubt. The facts may be summarized as follows. Defendant was a receptionist for the Vermilion County State’s Attorney’s office. In February 1982, she began looking for a typewriter for her son Paul. Defendant had a typewriter from her office at her home for the purpose of doing office work. Paul Frazier worked at the Urbana Nursing Home in Urbana, Illinois. He asked defendant if he could take the typewriter she had at home to his place of employment. She said that he could not, but he removed the typewriter from the house when his parents were not at home. He returned it after several weeks of cajoling by his parents; and to avoid his father’s threatened visit to Paul’s employer. Defendant and her husband agreed among themselves to look for a typewriter for Paul. Defendant’s daughter, Lori Tucker, mentioned her mother’s interest in buying a typewriter to her 16-year-old brother-in-law, Mark Tucker. Defendant subsequently purchased a typewriter which Mark had removed from Ridgefarm High School. She was charged with theft of the typewriter. Mark Tucker, testifying under a grant of immunity, stated that in February 1982, he told Lori Tucker that he had found a typewriter. This was not true. Toward the end of February, Lori told him that her mother was looking for a typewriter. He told Lori that he would sell the typewriter he had for $40, and until he obtained a machine to sell her, he told Lori that the typewriter was in the trunk of his brother’s car. On March 6 or 7, 1982, he broke into the Ridgefarm High School and removed an IBM Selectric II typewriter with a lSVa-inch carriage — the only unplugged typewriter in the typing classroom. He placed the machine on his bedroom dresser and told Lori that night that she could pick the typewriter up from his room. He returned to the Arcade in Ridgefarm, Illinois, later that evening and Lori gave him $40; when he went home the typewriter was gone. Lori and her husband lived behind the Tucker home in a trailer. Mark testified that his family frequently had items for sale; and that, in fact, his brother had a typewriter and his family had two typewriters. Lori Tucker testified but was uncertain about the dates surrounding the inquiries about the typewriter and its purchase. She knew that her mother had spoken to several persons in trying to locate a typewriter; she told Mark that her mother was looking for a typewriter. A few weeks later, Mark told her he had a typewriter and would sell it for $40. Between that day and the date of the purchase, he told her that the typewriter was in the trunk of his brother’s car. On the night of the purchase, she was with her parents at the Arcade in Ridgefarm. After being told by Mark that she could pick up the typewriter from his bedroom, she and her mother did so. No one was at home that evening and only the light in the front room was on. The machine was sitting openly on Mark’s dresser. They placed the typewriter in the truck and returned to the Arcade. Defendant gave Lori $40 to pay Mark; thereafter, defendant and her husband' left the Arcade. Lori gave Mark the money when he returned to the Arcade several hours later. On the way home from the Arcade, defendant’s husband, John Frazier, Jr., told defendant that the typewriter looked like it was a good deal but, at that price, it would "probably need repairs. On the following day Mr. Frazier took the typewriter to the apartment of another daughter, Diana McDaniel to keep Paul from taking it before he had repaid his parents. On March 8, 1982, the burglary at Ridgefarm High School was discovered and reported to police. The police report described the typewriter as a dark brown IBM Electric typewriter with a serial No. 26-1685702. The report was turned in at the Public Safety Building on March 8, for transmittal to the State’s Attorney’s office. In the normal course of events, that report should have been at the State’s Attorney’s office on the morning of March 9. One of defendant’s responsibilities was to organize police reports and log them into a ledger book as they were delivered to the office. Defendant had apparently established this ledger system because the office staff had difficulty locating police reports within the office. Defendant had tried several systems but the problem of getting the police reports entered into the ledger system before the attorneys took them continued. The police report regarding the burglary at Ridgefarm High School had an identification number of V82-1952; this report was not found in the ledger for the month of March 1982. Examination of the ledger book at trial showed that some of the entries were started and not completed; several pages carried dates but no entries; and there were loose sheets in the book carrying different names and numbers which seem to coincide with case numbers. Another secretary occasionally assisted defendant in logging the reports into the ledger book. The ledger system was abandoned by the State’s Attorney’s office in April 1982. Defendant acknowledged that she saw the police report on the burglary at Ridgefarm High School. On March 29, 1982, police officers questioned Mark Tucker. Lori telephoned her mother at work and informed her that Mark had been questioned about a typewriter. When Paul Frazier came to pay for the typewriter, defendant refused to give him the machine as she had become suspicious that it was stolen. She spoke to her husband about this prospect and considered speaking to either the principal of Ridge-farm High School or the police about the typewriter. She did not do so, however, for several reasons: (1) The typewriter she had purchased was tan, not dark brown; (2) Lori had obtained it from a family member; (3) Mark had told Lori that he had a typewriter several weeks before the burglary occurred; (4) the typewriter had been openly displayed at Mark’s home; and (5) she had not thought anyone would sell a stolen typewriter to someone who worked in the State’s Attorney’s office. Mr. Frazier testified that on the weekend before Easter he told defendant that they would take the typewriter to the high school to determine whether it had been stolen. He stated that defendant had been upset about discussing the matter with anyone because of her employment at the State’s Attorney’s office. On the morning of Monday, April 12, 1982, Jack Johnson, special agent for the Division of Criminal Investigation, State of Illinois, and John Howard, Vermilion County Sheriff’s Department, contacted defendant at work. She voluntarily gave a statement at that time and, when the first statement proved inaudible for transcription, she went to the Public Safety Building during her lunch hour and gave a second taped statement. Defendant told the authorities that the typewriter was at Diana’s residence and arranged for them to obtain the typewriter from Diana. She also made arrangements for the investigating officers to speak to her daughter Lori. Defendant testified that she had not thought anything was wrong with the $40 price of the typewriter. She had previously spoken to Bob Payne, county clerk, about the prices of typewriters since items from the courthouse were occasionally bid through his office. He had told her that electric typewriters, including IBM typewriters, had been bid out of his office for $45 to $60. Based upon this discussion and advertisements for used typewriters in the newspaper and on television, she had thought $40 to $60 was a fair price for the typewriter. Various persons testified that defendant had spoken to them about locating a typewriter for her son. Payne testified that he had sug-gested a price range of $50 to $75 to defendant and had informed her that he would not pay more than $100 for an electric typewriter over five years old because of the expense of repairs. Several other persons testified to defendant’s good reputation in the community for honesty and integrity. The typewriter was purchased in 1977 for $650. Patricia Noggle, business teacher at Ridgefarm High School, opined that the 1982 fair market value of the typewriter in question was $400. A judgment of guilty was entered only on count II of the six-count indictment. Count II read as follows: “That Lucille E. Frazier ***, on or about a date between *** March 8 and April 12, 1982, *** committed the offense of Theft (Over $300.00), in that she did knowingly obtain unauthorized control over stolen property, to-wit: One (1) IBM electric typewriter, Serial No. 26-1685702 stolen from the Ridge-farm High School on or about March 7, 1982, under such circumstances as would reasonably induce her to believe that the property was stolen, and did knowingly use said typewriter in such manner as to deprive the owner, to-wit: Ridgefarm High School, permanently of such use or benefit, said typewriter having a value in excess of Three Hundred Dollars ($300.00), in violation of Chapter 38, Section 16 — 1, Illinois Revised Statutes.” We conclude that defendant was thus convicted and sentenced under section 16 — 1(d)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 16 — 1(d)(2)): “Theft. A person commits theft when he knowingly: * * * (d) Obtains control over stolen property knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and * * * * (2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit.” The time frame relevant for a conviction under section 16 — 1(d) was discussed in People v. Dickerson (1976), 41 Ill. App. 3d 464, 353 N.E.2d 427, wherein the defendant was charged with the theft of five snowmobiles under section 16 — 1(d)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 16 — 1(d)(1)): “The crime with which defendant was charged is the statutory equivalent of the much older crime of receiving stolen property. (See People v. Baxa, 50 Ill. 2d 111, 115 (1971); People v. Rubin, 361 Ill. 311, 327-28 (1935).) Knowledge by defendant that the property was stolen when he received it has been, and still is, an element of this offense. (Baxa, at 114, 115; People v. Stewart, 20 Ill. 2d 387, 392 (1960); Rubin, at 328; People v. Weiss, 34 Ill. App. 3d 840, 842 (1976).) The modern statute provides an alternative ■ element to proof of actual knowledge-proof that stolen property was obtained under such circumstances as would reasonably induce the defendant to believe the property stolen. The addition of this statutory alternative does nothing to alter the crucial time frame requisite to the ‘guilty knowledge’ element. The actual knowledge, or the circumstances which would reasonably induce such belief, must exist at the time of receipt of the stolen property; knowledge gained afterward does not satisfy this critical element. * * * There is a long line of cases involving receiving stolen property which line indicates that when circumstantial evidence alone is relied on to prove the element of guilty knowledge, the circumstances must point clearly and conclusively, beyond a reasonable doubt, to the fact that ‘defendant knew the goods were stolen at the time he received them and must exclude every reasonable hypothesis other than that of guilt.’ (Emphasis added.) (People v. Rubin, 361 Ill. 311, 328 (1935); People v. Berg, 91 Ill. App. 2d 166, 170 (1968); see People v. Legear, 29 Ill. App. 3d 884, 888 (1975).)” (41 Ill. App. 3d 464, 467-68, 353 N.E.2d 427, 428-29.) We find Dickerson to be controlling in this case. Having reviewed the record in light of the applicable standards, we find insufficient evidence of guilty knowledge at the time defendant received the stolen goods to sustain her conviction under section 16 — 1(d). Judgment reversed. MILLS, P.J., and GREEN, J., concur.