THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT K. DABROWSKI *et al.*, Defendants-Appellants.

Second District Nos. 2—86—0707, 2—86—0708 cons.

Opinion filed November 20, 1987.

Joel Gould and James J. McGraw, both of Chicago, for appellants.

James S. Williams, State's Attorney, of Mt. Carroll, and Barbara J. Slingerland, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial, defendants, Robert K. Dabrowski and Wojciech A. Sitarski, were convicted of theft pursuant to section 16–1(d)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 16–1(d)(1)). Defendants were each sentenced to two years of probation. In addition, Dabrowski was fined $2,000, and Sitarski was fined $1,500. Defendants appeal. We affirm.

On the evening of October 5, 1985, Joel Ritchie docked his 18-foot boat at the dock in Marquette Park, Carroll County, Illinois. The boat was tied to the dock approximately 10 feet north of the launching ramp. A 1985, 65-horsepower Evinrude motor was attached to the boat. The motor was mounted to the boat by four bolts and was operated by an electrical cord which ran from the motor to a battery contained in an aluminum box upon which the operator sat. The motor was blue and silver, brightly finished, and was valued at approximately $2,386.

Later that evening, Jeff Berg, a passing motorist who was familiar with the Ritchie boat, noticed that the boat was not docked at its usual place, but rather was pulled up on the launching ramp with its motor toward the shore. Berg further observed a second boat, later identified as belonging to Sitarski's wife, located approximately 15 feet from the Ritchie boat. In addition, Berg observed four people in the launching ramp area and a van with a boat trailer in the parking area.

Sometime between 7 and 8 a.m. on October 6, 1985, Ritchie returned to Marquette Park to check his boat. Upon arriving, Ritchie discovered the boat tied to some trees. The motor had been removed from the boat and was missing. Ritchie contacted the Savanna, Illinois, police department and reported the motor stolen.

Later that morning, 15-year-old Ty Kinder and 12-year-old Robert Hochbaum were walking on North Fifth Avenue in Savanna, approximately one-half to three-quarters of a mile from Marquette Park. As they walked down the road, Ty saw something silver in the weeds about 10 or 15 feet ahead on the east side of the road. The boys approached the silver object and discovered it to be a boat motor. The motor was located approximately five feet from the side of the road in weeds about "knee cap," or one to two feet high. The motor was lying on its side and was approximately 18 inches high. It was partially covered with weeds. The boys did not disturb the motor or the weeds surrounding it. The boys proceeded to the Kinder house, where they reported their discovery to Ty's father. Ty's father then called the police.

Lieutenant Keith Dauphin of the Savanna police department responded to the Kinder home, and the boys led him to the location of the motor. Dauphin removed some brush from the motor and partially lifted it to locate the serial number. Dauphin established that the serial number on the motor matched the serial number of the motor Ritchie had previously reported stolen. The four mounting bolts had been removed, and the electrical cord had been severed. Before leaving the scene, Dauphin re-covered the motor with brush. Dauphin subsequently obtained permission from the chief of police to conduct a surveillance on the motor at the end of his shift. During the remaining hours of his shift, between 12:30 and 2:30 p.m., Dauphin drove by the location of the motor six times. Dauphin was unable to see the motor on any of his passes.

At approximately 3:30 p.m., Dauphin returned to the scene wearing a camouflage fatigue top and blue jeans. Dauphin secreted himself in the weeds approximately 20 feet from the motor. As darkness set in, Dauphin advanced to a position approximately five to six feet from the motor. During his surveillance, Dauphin observed heavy vehicular traffic and one pedestrian pass the location of the motor.

At approximately 7:20 p.m., a streetlight automatically turned on at the intersection of Water Tower Road and North Fifth Street, approximately 15 to 20 yards from the location of the motor. At the same time, Dauphin observed a van approaching from the south. The van began to slow down as it approached the location of the motor

and stopped directly in front of it. The motor and Dauphin were located on the passenger side of the van, with Dauphin crouched down approximately five feet behind the motor. Dauphin observed Dabrowski exit the passenger side of the van. He further observed Sitarski begin to exit the van from the driver's side. Dabrowski then opened the cargo door of the van. As another vehicle approached the van from the south, Dabrowski closed the cargo door and entered the van on the passenger side. Dauphin observed Sitarski, who had not fully exited the van, similarly close the driver's side door. This fact is disputed by Sitarski, who testified that he had fully exited the van and returned to close the driver's side door when he noticed the car approaching the van.

After the car passed, Dabrowski exited the van and again opened the cargo door. Defendants were observed moving items around in the cargo area. Dauphin was able to observe defendants' faces and actions due to the illumination provided by the streetlight and the interior lights of the van. Dauphin observed defendants approach the motor, remove the vegetation, and begin to lift the motor. After defendants had raised the motor two to three feet, Dauphin identified himself and advised them that they were under arrest for possession of stolen property.

Subsequent to arresting defendants, Dauphin examined the cargo area of the van, which contained camping equipment, tools, and a large supply of picked mushrooms. Dauphin observed that the items had been arranged in the cargo area so that an item the size of the motor could be placed inside. Dauphin and another police officer then placed the motor in the van and transported it to the police station. Ritchie was notified about the recovery of the motor and later identified it as belonging to him.

Upon questioning, Sitarski stated that the van was registered to his wife. Sitarski further stated that he, Dabrowski, and two friends had been fishing on the previous evening at Marquette Park. Sitarski stated that he was staying at a motel in Elizabeth, Illinois, and that a boat owned by Sitarski's wife could be found at that location. Sitarski explained that he and Dabrowski stopped along the side of the road because they noticed the motor in the weeds and intended to pick it up and turn it over to the authorities. Sitarski stated that they were on their way back to the motel after purchasing fresh fish from a store in Savanna. North Fifth Street is a through route between Savanna and Elizabeth. Sitarski also stated that they had been picking mushrooms and discovered the motor as they were examining the roadside for an area in which to return to pick mushrooms. Sitarski

explained that after stopping on the side of the road, the approaching car made Sitarski realize that he had left the driver's side door open, so he returned to shut it. It was further explained that Dabrowski returned to the van because he had broken off the handle on the cargo door and was looking for tools.

Defendants were tried and convicted of theft on the basis that they obtained possession of stolen property under such circumstances as would reasonably induce defendants to believe the property was stolen and with an intent to permanently deprive the owner of its use. Defendants' post-trial motions were denied, and defendants were each sentenced to two years' probation and fined. This appeal followed.

Defendants contend on appeal that the trial court erred in finding them guilty since (1) the State failed to prove that the motor was stolen "by another"; (2) they did not possess guilty knowledge; (3) they did not intend to permanently deprive the owner of the motor of its use; (4) it was legally impossible to find them guilty of theft since the motor had been recovered by the police; and (5) the police surveillance was a form of entrapment.

We first address defendants' assertion that the State failed to prove that the property received by defendants was stolen "by another." Defendants argue that proof of theft "by another" is a necessary element of a section 16—1(d)(1) prosecution. We disagree.

Section 16—1(d)(1) provides:

"A person commits theft when he knowingly:

* * *

(d) Obtains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property." Ill. Rev. Stat. 1985, ch. 38, par. 16—1(d)(1).

Defendants cite a long line of cases, the most recent of which include *People v. Perkins* (1983), 115 Ill. App. 3d 423, *People v. Weiss* (1976), 34 Ill. App. 3d 840, and *People v. Dickerson* (1974), 21 Ill. App. 3d 977, *rev'd on other grounds* (1975), 61 Ill. 2d 580. Although we agree that in each of these cases the court held that the State was required to prove that the property was stolen "by another" (*People v. Perkins* (1983), 115 Ill. App. 3d 423, 425; *People v. Weiss* (1976), 34 Ill. App. 3d 840, 842-43; *People v. Dickerson* (1974), 21 Ill. App. 3d 977, 983), we note that these cases were construing the elements of section 16—1(d) theft prior to that section being amended. On July

1, 1984, Public Act 83—715, section 1, amended section 16—1(d) to delete the words "by another." See Ill. Rev. Stat. 1985, ch. 38, par. 16—1(d).

█�a█ █ It is a principle of statutory construction to ascertain and effectuate the legislature's intent. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277; *Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 817.) In construing the legislature's intent, the court must look first to the statutory language itself. (*Logston*, 103 Ill. 2d at 277; *Mitee Racers, Inc.*, 152 Ill. App. 3d at 817.) Where the statutory language is clear and unambiguous, the court must give effect to its plain and ordinary meaning and may not look to extrinsic aids for construction. (*Logston*, 103 Ill. 2d at 277; *Mitee Racers, Inc.*, 152 Ill. App. 3d at 817.) The language of the statute in the instant case is not ambiguous. The legislature has taken affirmative action to delete the words "by another," and we construe that action as relieving the State of its burden of proving in a section 16—1(d)(1) prosecution that the property was stolen "by another." This conclusion was similarly reached by the Appellate Court for the First District in *People v. Drake* (1987), 156 Ill. App. 3d 425. Accordingly, we hold that in actions for theft brought pursuant to section 16—1(d)(1), the State is no longer required to prove that the property was stolen "by another."

█b█ Defendants next contend that the State failed to prove that defendants possessed guilty knowledge that the motor was stolen. Citing *People v. MacBeth* (1950), 405 Ill. 608, and *People v. Frazier* (1983), 119 Ill. App. 3d 770, defendants argue that because all of the State's evidence was circumstantial, proof beyond a reasonable doubt that defendants possessed guilty knowledge that the motor was stolen requires the exclusion of every reasonable hypothesis other than that of guilt. Defendants conclude that the facts of the instant case do not exclude every reasonable hypothesis other than defendants' guilt. We disagree.

The State has argued that defendants' possession of the motor provides direct evidence that defendants knew that the motor was stolen. However, in a section 16—1(d)(1) prosecution, mere possession of stolen property does not create an inference of guilt. (*People v. Sherman* (1982), 110 Ill. App. 3d 854, 861.) Nonetheless, we agree with the State's alternative argument that the circumstantial evidence surrounding defendants' possession of the motor adequately supports the trial court's judgment.

█c█ Guilty knowledge may be established by proof of circumstances which would induce the belief in a reasonable mind that the

property was stolen. (*People v. Stewart* (1960), 20 Ill. 2d 387, 392.) The recipient of the property need not have actual or positive knowledge of the theft, but, rather, need only obtain the property under such circumstances as would make that person believe the property was stolen. *Stewart*, 20 Ill. 2d at 392.

■ A conviction may be sustained solely on the basis of circumstantial evidence. (*People v. Russell* (1959), 17 Ill. 2d 328, 331.) However, "[w]here circumstantial evidence, alone, is relied upon to prove guilty knowledge in receiving stolen property, the circumstances, when considered together, must point clearly and conclusively, beyond a reasonable doubt, to the fact that the defendant knew the goods had been stolen at the time he received them and must exclude every reasonable hypothesis other than that of guilt." (*People v. MacBeth* (1950), 405 Ill. 608, 614.) This is not to say that the trier of fact is required to examine every potential theory of innocence and elevate those theories to the status of reasonable doubt. *People v. Huff* (1963), 29 Ill. 2d 315, 320; *People v. Russell* (1959), 17 Ill. 2d 328, 331; *People v. Tyson* (1985), 137 Ill. App. 3d 912, 917; *People v. Daniels* (1983), 113 Ill. App. 3d 523, 528-29.

■ In the instant case, the State presented sufficient evidence to establish that defendants knew that the motor was stolen or obtained the motor under such circumstances as would reasonably induce them to believe that it was stolen. The trial testimony places defendants at the launching ramp in Marquette Park on the evening that the motor was stolen. Furthermore, defendants' conduct in slowly approaching the location of the motor at night, stopping directly in front of the motor, returning to the inside of the van when another car approached, making room in the cargo area of the van *before* investigating or examining the motor, and walking directly to the motor and removing the vegetation surrounding it prior to picking it up amply supports the trial court's verdict. From these facts the court could infer that defendants knew in advance the motor's size and location. Furthermore, the court could infer from defendants' behavior that they knew they were participating in a criminal act. Finally, the record indicates that at the time the motor was found, it appeared new and was brightly finished. In addition, it was covered with vegetation, and its electrical cord had been severed. From these facts, the court could conclude that the motor's condition should have placed defendants on notice that the motor was stolen.

■ Although defendants provided the court with an explanation for both their discovery of the motor and their conduct when the car passed, the court is not required to accept that explanation. In a

bench trial, the court, as the trier of fact, is not required to accept a defendant's version of the facts and is entitled to consider the probability or improbability of the explanation in light of the surrounding circumstances. (*People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 477; *People v. Drake* (1985), 131 Ill. App. 3d 466, 472.) It is the function of the trier of fact to determine the credibility of the witnesses and the weight that should be given to their testimony, and a reviewing court should not substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Molstad* (1984), 101 Ill. 2d 128, 133.) A trier of fact may disregard exculpatory explanations or other evidence that tends to support a defendant's innocence and rest its verdict instead on the circumstantial evidence of guilt presented by the State. *People v. Locascio* (1985), 106 Ill. 2d 529, 537.

■■■ The court in the instant case chose not to believe defendants' story. In rejecting defendants' explanation, the court stated that "people do not drive along the highway at 20 miles an hour at this time of day without a spotlight looking in the weeds for mushrooms or areas to find mushrooms." The court further found "it hard to believe [defendants] didn't check [the motor] out first before they moved the items in the van." The court addressed the credibility of the witnesses and their testimony, and the evidence is not so unsatisfactory as to raise a reasonable doubt of defendants' guilt. Therefore, this court will not substitute its judgment for that of the trier of fact. We conclude that the trial court did not err in finding that defendants possessed guilty knowledge that the motor was stolen.

■■■ ■ Defendants next contend that the trial court erred in finding them guilty since the State failed to prove that they intended to permanently deprive the owner of the motor of its use. Defendants argue that the condition of the motor and circumstances under which it was found indicated that it was abandoned or lost rather than stolen, thereby negating any intent on their part to permanently deprive the owner of its use. We disagree.

The intent to permanently deprive the owner of property of the use of the property may be established by circumstantial evidence. (*People v. Smith* (1984), 124 Ill. App. 3d 914, 922; *People v. Sherman* (1982), 110 Ill. App. 3d 854, 859.) Intent may be inferred from all the facts and circumstances of the case. (*Smith*, 124 Ill. App. 3d at 922-23; *Sherman*, 110 Ill. App. 3d at 859.) Although defendants offered an uncontradicted explanation that they intended to take what they believed to be abandoned property to the authorities, defendants' explanation must be reasonable, and its credibility is a question for the

trier of fact. (*Smith*, 124 Ill. App. 3d at 923; *Sherman*, 110 Ill. App. 3d at 860.) The explanation may be rejected by the trier of fact even if uncontradicted. *Smith*, 124 Ill. App. 3d at 923; *Sherman*, 110 Ill. App. 3d at 860.

██ In the instant case, defendants' conduct in approaching the location of the motor coupled with the motor's condition gave rise to the inference that defendants intended to commit a criminal act by taking the motor. From this evidence the trial court disbelieved defendants' story. Since this factual finding is not improbable, no reasonable doubt has been raised as to defendants' guilt. (See *People v. Smith* (1984), 124 Ill. App. 3d 914, 923-24.) Therefore, we conclude that the trial court did not err in finding that defendants intended to permanently deprive Ritchie of the use of his motor.

██ Defendants next contend that because Dauphin found the motor prior to defendants' possession, the motor lost its status as "stolen," thereby making it impossible for defendants to commit the crime of receiving stolen property. Defendants further contend that Dauphin's conduct of allowing the motor to remain "in view" five feet from the road constituted entrapment. In response, the State contends that defendants have waived these arguments since they raise them for the first time on appeal. We note that defendants raised the entrapment issue in their closing argument. We further note that defendants raised both the entrapment and impossibility issues in their post-trial motion. Although we reject the State's waiver argument, we nonetheless find defendants' contentions to be without merit.

Defendants argue that the motor lost its status as stolen when Dauphin verified that it was Ritchie's motor and placed it under surveillance. We disagree.

Defendants are unable to cite any relevant Illinois cases to support their claim. Instead, this court is referred to case law from foreign jurisdictions holding that police custody of stolen property results in that property's losing its status as stolen. (See *United States v. Cawley* (3d Cir. 1958), 255 F.2d 338; *Felker v. State* (1973), 254 Ark. 185, 492 S.W.2d 442; *State v. Niehuser* (1975), 21 Or. App. 33, 533 P.2d 834; *Bandy v. State* (Tenn. 1979), 575 S.W.2d 278.) In each of these cases, the court refused to sustain theft convictions where the original thieves of stolen property cooperated with the police by using that property to help apprehend defendant purchasers. *Cawley*, 255 F.2d at 340; *Felker*, 254 Ark. at 191, 492 S.W.2d at 446; *Niehuser*, 21 Or. App. at 37-38, 533 P.2d at 837; *Bandy*, 575 S.W.2d at 281; see also *United States v. Dove* (4th Cir. 1980), 629 F.2d 325, 329 (wherein

the court held that by allowing a stolen car to remain on a used car lot for over a month while under surveillance, the FBI was in actual and exclusive possession of the car, thereby causing it to lose its status as stolen).

We believe a better approach to this question was taken in *United States v. Johnson* (8th Cir. 1985), 767 F.2d 1259. In *Johnson*, the court noted the distinction between recovery or actual physical possession of property on behalf of the rightful owner, and mere observation or surveillance of the property for the purpose of apprehending the persons who later take possession of it. (767 F.2d at 1267-68; see also *United States v. Henneberry* (8th Cir. 1983), 719 F.2d 941, 947-48; *United States v. Muzii* (2d Cir. 1982), 676 F.2d 919, 923-24.) In determining whether stolen property loses its status as stolen once it is identified by the police, the test is whether the police took *possession* of the property with the *intent to recover it on behalf of its rightful owner. United States v. Johnson* (8th Cir. 1985), 767 F.2d 1259, 1268.

■■ In the instant action, Dauphin merely examined the property at the place in which it was found to verify that it was the stolen motor. Dauphin did not take *physical possession of it on behalf of its owner*, nor does the record reflect that Dauphin contacted Ritchie to advise him that the motor had been recovered. Rather, Dauphin set up a three-hour police surveillance in order to apprehend those who might take possession of it.

We note that police surveillance of property believed to be stolen is a useful investigative tool in apprehending both the original thief or those with the intent to permanently deprive the owner of the property's use. (See, *e.g., People v. Sherman* (1982), 110 Ill. App. 3d 854, 856 (police discovered stolen auto and placed it under surveillance in order to apprehend party who obtained possession).) To find that Dauphin recovered the motor when he placed it under surveillance would be a significant setback to law enforcement, especially with regard to apprehending and bringing to justice persons who purchase or otherwise obtain stolen property with the intent to permanently deprive the owner of its use. (See *United States v. Henneberry* (8th Cir. 1983), 719 F.2d 941, 948.) Therefore, we hold that in prosecutions for receiving or possessing stolen property, observation or surveillance of the property by the authorities does not amount to "recovery" of the property and loss of its status as stolen. Accordingly, Officer Dauphin's surveillance of the motor did not constitute recovery of the property such that it lost its status as stolen.

■■ ■ Defendants next contend that their possession of the motor was the result of an innocent discovery of property and that Offi-

cer Dauphin's conduct in allowing the motor to remain in view before the discovery constitutes entrapment. We disagree.

Entrapment is established where law enforcement officers or their agents conceive a criminal enterprise and incite or induce a defendant into committing an offense which he would not have otherwise committed. (*People v. Dollen* (1972), 53 Ill. 2d 280, 283; *People v. Norks* (1985), 137 Ill. App. 3d 1078, 1083.) However, where the defendant has the intent to commit the crime and does so merely because an officer, for the purpose of securing evidence, affords the defendant the opportunity to commit a criminal act or purposely aids and encourages him in its perpetration, there is no entrapment. (*Dollen*, 53 Ill. 2d at 283-84; *Norks*, 137 Ill. App. 3d at 1083.) Therefore, to establish entrapment, the evidence must disclose an improper inducement on the part of the law enforcement authority and the lack of a predisposition to commit the crime on the part of the defendant. *People v. Norks* (1985), 137 Ill. App. 3d 1078, 1083.

Defendants characterize their discovery of the motor on the side of the road as innocent. Defendants cite *People v. Dollen* (1972), 53 Ill. 2d 280, in support of their position that such an innocent discovery constitutes entrapment. The defendant in *Dollen*, a manager of a cab company, found a package of narcotics in a cab during a routine inspection. (53 Ill. 2d at 282.) Wright, the driver of the cab and a police informer, repeatedly encouraged the defendant to sell the narcotics despite the defendant's refusals. (53 Ill. 2d at 282.) The defendant finally agreed to sell the package to a buyer produced by Wright and at a price suggested by Wright. (53 Ill. 2d at 282.) The buyer Wright produced was a State law enforcement officer. 53 Ill. 2d at 281.

In reversing the defendant's subsequent conviction for selling narcotics, our supreme court noted that the defendant innocently gained possession of the narcotics during a routine inspection of the cab. (53 Ill. 2d at 284.) The court stated that Wright "possessed an unparalleled opportunity to place the package in his vehicle" and "actively negotiated the price of the narcotics." (*People v. Dollen* (1972), 53 Ill. 2d 280, 284.) Although the court did not find that any law enforcement official was involved in a plan to place the narcotics in the cab, it nonetheless concluded that the totality of the evidence was sufficient to indicate that Wright, acting independently, may have planted the package in the cab with the intent that it be found by the defendant, thereby establishing the possibility of entrapment. 53 Ill. 2d at 284.

In the instant action, there is no evidence that Officer Dauphin or any other law enforcement officer was involved in conceiving

or planning the criminal offense for which defendants are charged. Nor is there any evidence to indicate that Officer Dauphin incited or induced defendants to take the motor. Despite defendants' assertions to the contrary, the record indicates that the motor was not "in view," but rather was covered with brush in such a manner as it could not be identified by passersby. In addition, defendants concede that "[t]he action of Officer Dauphin in allowing the motor to remain where it was and hiding in the weeds was more or less passive." Officer Dauphin merely afforded defendants the opportunity to commit the crime. Furthermore, we find adequate support in the record to indicate that defendants were predisposed to commit the offense charged. Defendants stopped at the scene in the cover of darkness. They returned to the van when a passing car approached. Furthermore, they made room in the van for the motor prior to examining it. These facts all indicate that defendants intended to take the motor without being seen. Therefore, absent active participation in the crime by Officer Dauphin and in the presence of evidence showing a predisposition on the part of defendants to commit the crime, we find defendants' claim of entrapment to be without merit.

Accordingly, this court affirms the judgment of the lower court in finding defendants guilty of theft.

Affirmed.

LINDBERG, P.J., and DUNN, J., concur.