[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 492 
 On Application for Rehearing
The opinion of August 8, 1997, is withdrawn and the following is substituted therefor.
Tony Alan Walls was indicted for the crime of receiving stolen property, § 13A-8-16, Ala. Code 1975. At trial, the jury was charged on receiving stolen property in the first, second, and third degrees. Sections 13A-8-17 through -19, Ala. Code 1975. The jury returned a conviction of receiving stolen property in the first degree; Walls was given a five-year suspended sentence, conditioned upon his performing 200 hours of community service and paying a $10,000 fine, court costs, and a $50 victim compensation assessment. The Court of Criminal Appeals reversed his conviction because of an erroneous jury instruction and remanded the case for a new trial. See Walls v.State, 711 So.2d 483 (Ala.Cr.App. 1996). In light of this holding, the Court of Criminal Appeals did not address Walls's arguments that the state had not presented sufficient evidence to convict him of receiving stolen property. Walls petitioned this Court for a writ of certiorari, claiming that the evidence was insufficient, and, therefore, that the Court of Criminal Appeals not only should have reversed his conviction, but should have rendered a judgment in this favor. We granted the petition and issued the writ. Because we hold that the evidence was insufficient to convict Walls for the completed offense of receiving stolen property, we reverse the decision of the Court of Criminal Appeals to the extent that it would have permitted the state to retry Walls on that charge. Further, because the jury was not charged on the lesser included offense of attempting to receive stolen property, we conclude that Walls is entitled to a judgment in his favor.
The facts of this case are set out in the opinion of the Court of Criminal Appeals; yet, because this case involves questions of the sufficiency of the evidence, it is appropriate to summarize the facts again here. In the morning hours of October 4, 1994, police officers observed Orville Ladon Haygood on the sales lot of the Gilbert-Baker Ford automobile dealership in Albertville. Haygood was carrying three radios that he had just stolen from cars parked on the lot. Before *Page 493 
he was able to make his getaway, Haygood spotted the police and ran into the woods adjacent to the dealership, leaving on the ground the three radios. The police retrieved the radios and apprehended Haygood several hours later. When Richard Baker, the president of the Ford dealership, arrived for work, the police returned the three radios to him.
While questioning Haygood, the Albertville police learned that he had intended to sell the radios to Walls, who operates a retail establishment that sells new and used car parts and accessories. Detective Alan Whitten then spoke with Baker about assisting the police in setting up Walls. Baker agreed to do so, giving the police his permission to use the three radios Haygood had stolen and supplying the police with eight additional radios, which had never been stolen, in order to make a controlled sale to Walls. Before conducting the sale, Albertville police obtained an "anticipatory search warrant" for Walls's business, expecting that he would later be in possession of the radios. The following day, October 5, 1994, Haygood, wired with an electronic monitoring device, entered Walls's place of business and proceeded to sell the 11 radios to Walls for $40 each. Just after Walls closed his store, police executed the anticipatory search warrant and recovered the radios. At trial, Walls was convicted of receiving stolen property.
Walls argues that the evidence was insufficient to sustain his conviction for the offense of receiving stolen property. Relying principally upon Farzley v. State, 231 Ala. 60,163 So. 394 (1935), Walls specifically contends that the evidence was insufficient to sustain a conviction for receiving stolen property because, he says, there is no basis on which to conclude that any of the 11 radios were "stolen," within the meaning of § 13A-8-16, Ala. Code 1975, at the time he received them. He argues that it is undisputed that eight of the radios had never been stolen, and he contends the other three had lost their "stolen" character when they were recovered by law enforcement officers before the controlled sale. We agree.
Section 13A-8-16, Ala. Code 1975, provides in pertinent part:
 "(a) A person commits the crime of receiving stolen property if her intentionally received, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner."
For the purposes of this section, the word stolen" is defined by statute as "[o]btained by theft, theft by appropriating lost property, robbery or extortion." Section 13A-8-1(12), Ala. Code 1975.
In Farzley, police detectives arranged for two men to "burglarize" a store, in the detectives' presence and with the consent of the store owner. Testimony indicated that the "burglars," under the direction of the detectives, removed from the store various items, which were then delivered to the detectives. In turn, one of the detectives sold these goods to the defendant, who was later convicted of receiving stolen property. The Farzley Court began its analysis by stating:
 "[I]t is essential to the crime [of receiving stolen property] that the goods received by [the] defendant were stolen and retained that status until they were delivered to [the] defendant. If they were stolen, they continued to be stolen goods until they were recovered by their owner or someone for him."
231 Ala. at 61, 163 So. at 395, citing Copertino v. UnitedStates, 256 F. 519 (3d Cir. 1919); People v. Jaffe, 185 N.Y. 497,78 N.E. 169 (1906); Kirby v. United States, 174 U.S. 47,63-64, 19 S.Ct. 574, 580, 43 L.Ed. 890 (1899); State v.Alderman, 83 Conn. 597, 78 A. 331 (1910); 53 C.J. 506, § 10. Applying these common-law principles, the Farzley Court concluded that the defendant could not be convicted for receiving stolen goods, because the goods were not "stolen" goods when they were delivered to the defendant. Indeed, the Court held that the goods had never been truly stolen at all:
 "The detectives saw [the 'burglars' enter the store], and saw them get the goods and bring them direct to their possession. The goods were at all times under their control and observation, and they had the power to prevent them from being carried out of their presence. One of the officers testified that they got the goods or helped get them with the intention of returning them *Page 494 
to the owner. They were in exactly the same status as though the detectives themselves had gone into the store and taken the goods without the intention of depriving the owner of them, but to set a trap to catch [the] defendant. The goods were in the custody of the agents of the detectives in their sight and presence and under their control while the ['burglars'] were carrying the goods to them.
 "The detectives were not guilty of larceny or burglary, because they had no criminal intent. There can be no stealing (larceny) unless there is a felonious taking and carrying away; that is, an intent to deprive the owner of the value of his property."
231 Ala. at 61, 163 So. at 395-96.
It is undisputed that eight of the radios supplied to the police by Baker and later purchased by Walls had never been stolen. Therefore, under Farzley, they cannot be the subject of the offense of receiving stolen property. "[I]f as a matter of fact [the goods] had not been stolen, there could be no conviction, no matter how strong the evidence tending to show that a defendant had reasonable grounds for believing they were stolen." Smitherman v. State, 340 So.2d 896, 900
(Ala.Cr.App. 1976), interpreting Farzley. In other words, a defendant may possess the requisite guilty mind, but if the property is not actually stolen property, then a circumstance that is unknown to him prevents him from committing the completed act prohibited by statute, i.e., the offense of receiving stolen property.
The state nonetheless urges that we should allow a conviction for receiving stolen property under § 13A-8-16 whenever a defendant has reasonable grounds to believe that property received has been stolen, without respect to whether the property received had been stolen in fact. The state refers us to cases from other jurisdictions in which courts have held that a defendant may be criminally liable for receiving, notwithstanding that the property received was not in fact stolen property. See State v. Bujan, 274 N.J. Super. 132,643 A.2d 628 (App.Div. 1994); State v. Sweeney, 701 S.W.2d 420
(Mo. 1985); State v. Pappas, 705 P.2d 1169 (Utah 1985). These cases demonstrate that some states have eliminated from their statutory "receiving" offense the requirement that the property received have been stolen in fact. While our legislature could similarly eliminate this requirement as an element of the completed "receiving" offense in this state, we conclude that to adopt such an interpretation of § 13A-8-16, as that section presently reads, would be directly contrary to the statutory language.
As noted previously, § 13A-8-16(a) states that [a] person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen." (Emphasis added.) Thus, the state would have us read out of the statute the express requirement that the property received, retained, or disposed of by the defendant have been stolen. This we decline to do.
 " 'A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants. Schenher v. State, 38 Ala. App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956).
". . . .
 " 'One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute. Fuller v. State, [257 Ala. 502, 60 So.2d 202
(1952),] citing Young's Case, 58 Ala. 358 (1877)." '
Ex parte Mutrie, 658 So.2d 347, 349 (Ala. 1993) (emphasis omitted).
The New Jersey, Missouri, and Utah cases cited by the state are distinguishable. The courts in those cases were interpreting state statutes based upon a provision of the Model Penal Code specifying that a "person is guilty of theft if he purposely receives, retains, or disposes of moveable property of another knowing that it has been stolen, or believing that it has probably been stolen." Model Penal Code (U.L.A) § 223.6 (1996 Supp.). See Bujan, supra, 274 N.J. Super. at 133-36,643 A.2d at 629-30. One will note *Page 495 
that, in contrast with § 13A-8-16, the Model Penal Code provision and each state statute interpreted in the cases cited by the state omit the requirement that the received "property of another" have been "stolen" in order for the offense to be completed. The state itself points out that those states that have sought to follow a view that an element of the crime of receiving is that the property is stolen property have accomplished this by drafting their statutes so as to insert the word "stolen" into their Model Penal Code-based provisions before the phrase "property of another." Respondent's brief at 10 n. 1, citing Bujan, supra. Because our statute does in fact contain the word "stolen" before the word "property," it is clear that the legislature intended to retain the requirement that the property received actually be stolen property. Accordingly, we hold that because eight of the radios were undisputedly never stolen, they could not be the subject of the offense of receiving stolen property.
In contrast, three of the radios purchased by Walls were, at one point, undoubtedly stolen. But, as noted above, the rules articulated in Farzley state that, in order to establish the offense of receiving stolen property, the property not only must be stolen but also must retain that status until it is delivered to the defendant. Further, if property is stolen, it continues to be stolen property only until it is recovered by the owner or someone for the owner. Farzley, 231 Ala. at 61,163 So. at 395. Under those statements of law, the evidence concerning the three radios stolen by Haygood would not support a conviction for receiving stolen property, because they lost their stolen character once they were recovered by police for the owner, and, indeed, restored to the owner before they were delivered to Walls.
However, as the state points out, Farzley is not, strictly speaking, controlling authority on the question whether the three radios taken by Haygood still retained their "stolen" character at the time Walls received them. The Farzley Court held that the goods in that case were never stolen, because of a lack of felonious intent. Therefore, the Court's pronouncements that property must retain its stolen status until it is delivered to the defendant and that property continues to be stolen property until it is recovered by the owner or someone for the owner are technically dicta.[1]
Notwithstanding, we believe that the rules declared inFarzley on this issue are correct statements of the law. Thus, we adopt the rule stated in 76 C.J.S. Receiving Stolen Goods § 5 (1994):
 "[W]here the actual physical possession of stolen goods has been recovered by the owner, his agent, or law enforcement officers, and afterwards carried to the receiver either by the original thief or the instrumentality through which the thief originally intended to convey it, at the express direction of the owner, his agent, or law enforcement office[r], for purposes of entrapping the receiver, his receiving of the goods is not receiving of stolen goods."
This rule is in accord with the reasoning employed inFarzley, and it is widely followed in other jurisdictions that retain the element that the property received be in fact stolen.[2] *Page 496 
The state argues that there is a split of authority on this issue, citing Vargas v. State, 818 S.W.2d 875 (Tex.App. 1991); and People v. Towery, 174 Cal.App.3d 1114, 220 Cal.Rptr. 475
(1985), cert. denied sub nom. Johnson v. California,478 U.S. 1006, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986). We find these cases also distinguishable.
The Texas court in Vargas, supra, upheld a conviction for theft by receiving where the defendant pawnbroker purchased jewelry that had been stolen but had been recovered by police before it was delivered to the defendant. The court relied entirely, however, upon a Texas statute specifically providing that stolen property does not lose its character as stolen property when it is recovered by a law enforcement agency. 818 S.W.2d at 879; Tex. Penal Code Ann. § 31.03(c)(5) (Vernon 1989). Alabama has no similar statute, and, in light of the apparently unanimous contrary authority, we decline to establish such a rule judicially.
If the requirement of § 13A-8-16 that property must in fact be "stolen" is to have any substance, then property must, at some point, lose its character as stolen. It can hardly be argued that property that has been restored to the physical custody of its owner, as in this case, is still "stolen" so as to allow a conviction for receiving it subsequent to its return. This is because, after its restoration to the owner, the property received has not been "obtained by theft," as required by § 13A-8-1(12), but has been obtained, rather, by the owner's consent. See McCord v. State, 501 So.2d 520
(Ala.Cr.App. 1986) (nonconsent to the taking of the property is a necessary element in proving theft). Such is also the case where the police have physical custody over goods that were previously stolen, for we believe that the property "is held by the police in trust for, or for the account of, the owner."People v. Rojas, 55 Cal.2d 252, 358 P.2d 921, 925,10 Cal.Rptr. 465, 469 (1961).
The California case of People v. Towery is distinguishable on its facts. There, an informant who worked as a truck driver told police that his employer was involved in a scheme to purchase and sell stolen property, specifically fuel oil. The police asked the informant to return to his usual activities and to tape record any conversations concerning illegal conduct. The informant alerted police after subsequently receiving stolen fuel oil and delivering it to his employer. After being convicted of receiving stolen property, the employer argued that the evidence allowed no more than a conviction for attempting to receive stolen property because, he argued, the involvement of police in the sting operation had given law enforcement officers constructive possession of the property and thus had deprived it of its "stolen" character. The court disagreed, holding that the use of the "feigned accomplice" did not divest the property of its stolen character, for the police had never taken possession of the property but rather had "merely observed the stolen property incident to the ongoing investigation."174 Cal.App.3d at 1137, 1140, 220 Cal.Rptr. at 490, 492.
Towery does not support the state's position, because that case does not hold that stolen property retains its nature as stolen property even after it is reduced to actual physical possession by the police. Rather, the court simply recognized a distinction between police conduct that constitutes mere observation of stolen property during an investigation, which does not strip property of its "stolen" character, and the actual physical recovery of stolen property by police, which does.[3] The Towery court itself recognized, *Page 497 
"Factually, of course, the instant case differs markedly fromPeople v. Rojas," a case in which the California Supreme Court held that the defendant could be convicted only for attempting to receive stolen property, rather than the completed offense, because police had actually seized the stolen property before it was delivered to the defendant. 174 Cal.App.3d at 1138, 220 Cal.Rptr. at 490. Indeed, Rojas, rather than Towery, is the California precedent parallel to the instant case.
We conclude that the evidence showed that none of the 11 radios were in fact "stolen" at the time Walls received them; thus, Walls could not consummate the completed offense of receiving stolen property under § 13A-8-16. Eight of the radios purchased by Walls had never been stolen, and the other three had lost their "stolen" character when the police took actual physical possession of them before they were delivered to Walls. Therefore, we reverse the judgment of the Court of Criminal Appeals insofar as it allows Walls to be retried for the completed offense of receiving stolen property.
Because we conclude that the evidence is insufficient to support Walls's conviction for the completed offense of receiving stolen property, the constitutional prohibition against double jeopardy prevents a retrial on that charge. SeeEx parte Roberts, 662 So.2d 229 (Ala. 1995); Burks v. UnitedStates, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, the question still remains whether the state may attempt to reprosecute Walls for the lesser offense ofattempting to receive stolen property; it is clear that the evidence presented at Walls's trial would have supported a conviction on that charge.
Section 13A-4-2, Ala. Code 1975, provides as follows:
 "(a) A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.
 "(b) It is no defense under this section that the offense charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the defendant believed them to be."
As we have explained, the fact that none of the radios were in fact "stolen" when Walls received them prevented the commission of the completed offense of receiving stolen property. However, this does not mean that the defendant could not be found to have committed a criminal act. Under §13A-4-2(b), if the "attendant circumstances" had been as Walls believed them to be, then the crime of receiving stolen property could have been committed; thus, the fact, unknown to Walls, that the radios were not actually stolen would not have prevented a conviction for an attempt to receive stolen property. Cf. Rhodes v. State, 686 So.2d 1288 (Ala.Cr.App. 1996) (where defendant believed substance he attempted to purchase was cocaine, fact that it was imitation did not prevent conviction for attempted possession of controlled substance). See also, e.g., Rojas, Zaborski, Hageman, Bandy, supra, n. 2.
However, Walls argues that the state cannot retry him even for the attempted offense, because he says such a retrial would also violate the rule against double jeopardy. It is a well-established principle of constitutional law that the prohibition against double jeopardy does not generally preclude retrial of a defendant whose conviction has been reversed on appeal because of an error in the trial proceedings. UnitedStates v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448
(1964); Ex parte Collins, 385 So.2d 1005 (Ala. 1980). But as we have recognized above, reversal of a judgment of conviction on the basis of insufficient evidence bars a retrial on the same offense upon which the conviction was laid. Burks, supra. However, this Court has held that where a conviction for a greater offense is reversed because of an insufficiency of the evidence, retrial upon lesser included offenses upon which the jury was charged is not barred by double jeopardy. Ex parteBeverly, 497 So.2d 519, 524-25 (Ala. 1986). Similarly, where an appellate court concludes that the evidence was insufficient to support the defendant's conviction for a greater offense, the *Page 498 
rule against double jeopardy is not violated where the case is remanded to the trial court for resentencing based upon lesser included offenses upon which the jury was instructed. Ex parteEdwards, 452 So.2d 508 (Ala. 1984). In contrast, where a conviction for the greater offense is reversed because of insufficiency and the jury was not charged on lesser included offenses, a criminal defendant may not be retried for those lesser included offenses. Ex parte Beverly, 497 So.2d at 525;Ex parte Roberts, 662 So.2d at 229.
It is undisputed that Walls's jury was instructed only on receiving stolen property in the first, second, and third degrees, §§ 13A-8-17 through -19, Ala. Code 1975, and not on attempting to receive stolen property. It is also clear that attempting to receive stolen property is a lesser offense that is included in the completed crime. Under § 13A-1-9(2), Ala. Code 1975, "[a]n offense is a lesser included one if . . . it consists of an attempt . . . to commit the offense charged." Therefore, under Ex parte Beverly and Ex parte Roberts, we are forced to hold that Walls cannot be retried on the lesser included offense of attempting to receive stolen property, upon which the jury was not charged.
We conclude that the evidence was insufficient to support Walls's conviction for the completed offense of receiving stolen property. Therefore, the judgment of the Court of Criminal Appeals is reversed insofar as it would have permitted the state to retry him on that charge. Because of the constitutional prohibition against double jeopardy, the state is similarly prevented from trying him on the lesser included offense of attempting to receive stolen property, upon which the jury was not charged. A judgment is hereby rendered in favor of the defendant, Walls.
APPLICATION GRANTED; OPINION OF AUGUST 8, 1997, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J., and KENNEDY and COOK, JJ., concur.
SEE, J., concurs in the result.
 On Application for Rehearing
[1] Later Alabama decisions have interpreted the principle set out in Farzley concerning the necessity that property be "stolen" at the time it comes into the hands of the defendant in order to sustain a conviction for receiving stolen property. SeeAshurst v. State, 462 So.2d 999, 1009 (Ala.Cr.App. 1984);Mefford v. State, 363 So.2d 1050, 1053 (Ala.Cr.App. 1978);Davidson v. State, 360 So.2d 728, 730 (Ala.Cr.App. 1978) writ denied; Smitherman v. State, 340 So.2d 896, 900
(Ala.Cr.App. 1976); see also Collins v. State, 385 So.2d 993,1004-05 (Ala.Cr.App. 1979) ("property remains stolen until such time [as] it is returned to its rightful owner"), reversed on other grounds, Ex parte Collins, 385 So.2d 1005 (Ala.), on remand, 385 So.2d 1010 (Ala.Cr.App. 1980). However, it does not appear that any Alabama case has dealt squarely with the particular question now before us, that is, whether stolen goods continue to be "stolen" despite their actual recovery by law enforcement officers.
[2] See State v. Vitale, 23 Ariz. App. 37, 530 P.2d 394 (1975);Felker v. State, 254 Ark. 185, 492 S.W.2d 442 (1973); People v.Rojas, 55 Cal.2d 252, 358 P.2d 921, 10 Cal.Rptr. 465 (1961);People v. Dabrowski, 162 Ill. App.3d 684, 515 N.E.2d 1345, 114 Ill.Dec. 74 (1987); State v. Sterling, 230 Kan. 790,640 P.2d 1264 (1982); Darnell v. State, 92 Nev. 680, 558 P.2d 624
(1976); State v. Hageman, 307 N.C. 1, 296 S.E.2d 433 (1982);People v. Zaborski, 59 N.Y.2d 863, 452 N.E.2d 1255,465 N.Y.S.2d 927 (1983); State v. Diephaus, 55 Ohio App.3d 90,562 N.E.2d 523 (1989); Booth v. State, 398 P.2d 863
(Okla.Crim.App. 1964); Bandy v. State, 575 S.W.2d 278 (Tenn. 1979); UnitedStates v. Johnson, 767 F.2d 1259 (8th Cir. 1985); United Statesv. Monasterski, 567 F.2d 677 (6th Cir. 1977); UnitedStates v. Cawley, 255 F.2d 338 (3d Cir. 1958). See alsoWharton's Criminal Law § 465 (13th ed. 1972); Jay M. Zitter, Annotation, Conviction of Receiving Stolen Property, or RelatedOffenses, Where Stolen Property Previously Placed Under PoliceControl, 72 A.L.R.4th 838 (1989); 66 Am.Jur.2d, ReceivingStolen Property § 7 (cum.supp. 1995).
[3] While other courts have also recognized this difference between police observation and physical recovery, see, e.g.,People v. Dabrowski, supra, n. 2; United States v. Dove,629 F.2d 325 (4th Cir. 1980); State v. Schmidt, 20 O.O.3d 264 (Ohio Comm.Pl. 1981), we need not address it here because it is undisputed that police took physical possession of the three radios before they were delivered to Walls.