* Note from the reporter of decisions: The Court of Criminal Appeals spells this this defendant's name Michael Dwayne Turner."
Michael Dewayne Turner was convicted of trafficking marijuana and failure to affix the appropriate tax stamps. Turner appealed his conviction to the Court of Criminal Appeals, where he contended, in pertinent part, that the trial court erred in denying his motion to suppress the search warrant because there was no legal basis for a search. The Court of Criminal Appeals affirmed Turner's conviction and, of particular pertinence, affirmed the trial court's denial of Turner's motion to suppress evidence seized when the police officers executed an anticipatory search warrant at his residence. We granted Turner's petition for a writ of certiorari, which seeks review of only this single issue. We hold that Alabama law did not authorize the warrant and that the exclusionary rule requires the suppression of the evidence. Accordingly, we reverse the judgment of the Court of Criminal Appeals.
Michael Turner came to the attention of law enforcement officials after a United States postal inspector noticed a package that was addressed to Turner at his Birmingham residence. The package, mailed from Los Angeles, California, bore a return address indicating "resident" as the return person. Suspicious of the contents of the package, the inspector asked for assistance from the Birmingham K-9 patrol. The dogs indicated the presence of marijuana by "alerting" to the package.
The inspector obtained a federal search warrant from a United States magistrate judge and opened the package. He found five individually wrapped bundles of material that field-tested as marijuana. The United States Attorney's office declined to prosecute Turner. The inspector then referred the matter to the Birmingham Police Department, which agreed to prosecute. Two of the five bundles of marijuana were turned over to the Birmingham Police Department. The other three were repackaged and a "controlled delivery" to Turner was arranged. Sergeant Michael Ashworth of the Birmingham Police Department obtained an anticipatory search warrant from a district court judge. The affidavit in support of the search warrant, issued on September 6, 1995, read in pertinent part:
 "On September 6, 1995, the package will be delivered, as addressed, to 176 Moonridge Avenue, Apartment 132, Homewood, Alabama 35209, by Postal Inspector Preston Parnell. Postal Inspector Parnell will be working in an undercover capacity, posing as a mail carrier. If *Page 1143 
delivery is successful at the aforementioned address, Birmingham narcotics officers will execute a search of the residence.
 "Based on the above information, I have probable cause to and do believe that marijuana, to-wit: a controlled substance, is presently located at 176 Moonridge Avenue, Apartment 132, Homewood, Jefferson County, Alabama, in violation of the laws of the State of Alabama."
On September 6, 1995, a "controlled delivery" was accomplished when a United States postal inspector, disguised as a mail carrier, delivered the package to Turner's apartment. Turner took the package inside the apartment but did not open it. When he attempted to leave the apartment, Turner was detained by a Birmingham police officer. Later that day, Sergeant Ashworth brought the search warrant, searched the premises, and seized the package.
Turner filed a motion to suppress the evidence obtained by means of the search warrant. The motion was denied, and Turner was tried and convicted. He appealed to the Court of Criminal Appeals.
The Court of Criminal Appeals, affirming the trial court's denial of the appellant's motion to suppress, relied on this Court's decision in Ex parte Walls, [Ms. 1960352, August 7, 1997] ("[w]hen the warrant in this case was executed, Alabama case law [Oswalt v. State] specifically held that such search warrants were authorized"), to find that the police officers were acting on a facially valid warrant when they searched the appellant's residence. On the same day the Court of Criminal Appeals issued its affirmance, however, this Court withdrew the Walls opinion followed by the Court of Criminal Appeals in this case, and substituted, in place of its withdrawn Walls opinion, Ex parteWalls, 711 So.2d 490 (Ala. 1997), which reversed Walls's conviction on the merits and rendered a judgment in his favor grounded on insufficiency of the evidence. This Court thereby reversed the Court of Criminal Appeals' decision of Walls v.State, 711 So.2d 483 (Ala.Crim.App. 1996), without discussing any issue relating to the execution of the anticipatory search warrant. Thereafter, the Court of Criminal Appeals withdrew its original opinion in this Turner case and substituted an opinion which held that "the deterrent purpose of the exclusionary rule would not be served here, because the police did not have knowledge, nor could they be charged with knowledge, that the warrant was invalid because of its anticipatory nature." Turner v.State 792 So.2d 1138, 1140 (Ala.Crim.App. 1998).
Although the Court of Criminal Appeals opined that "the search warrant in this case was not an anticipatory warrant," it recognized that it was anticipatory in nature. Turner, 792 So.2d at 1139. The record reflects that Sergeant Ashworth testified at the September 18, 1996 suppression hearing in this case, that he "sat down and wrote an anticipatory search warrant."
Turner argues that the Court of Criminal Appeals' opinion affirming his conviction is in conflict with a prior decision of this Court on the same point of law. Specifically, Turner contends that the Court of Criminal Appeals' finding that the police officers were acting in good faith in executing a facially valid anticipatory search warrant conflicts with this Court's opinion in Ex parte Oswalt, 686 So.2d 368, 372 (Ala. 1996), released on May 24, 1996, which invalidated anticipatory search warrants. Ex parte Oswalt reversed Oswalt v. State,686 So.2d 386 (Ala.Crim.App. 1994), which had upheld an anticipatory search warrant. *Page 1144 
This Court, in Ex parte Oswalt, explained that an anticipatory search warrant "anticipates that certain specific events will occur after the issuance of the warrant, those future events creating the probable cause that supports the warrant. If the future events do not occur, the warrant is void." Id. at 372. (Citations omitted.) Considering the language of § 15-5-2, Ala. Code 1975, and Rule 3.8, Ala.R.Crim.P., this Court concluded that the legislature did not intend to allow the issuance of a search warrant when "the crime to which the evidence at issue relates has not yet occurred and the evidence to be seized is not presently in the possession of the person whose premises are to be searched." Id. at 373. (Emphasis omitted.) Reading Rule 3.8 inpari materia with § 15-5-2, this Court stated:
 "Although the Rules of Criminal Procedure are to be liberally construed by this Court to `secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense' in criminal proceedings, Rule 1.2, Ala.R.Crim.P., we find no indication of an intent when Rule 3.8 was adopted to expand the grounds for granting a search warrant beyond those that were provided for in § 15-5-2 and its ancient predecessors. Thus, we look to § 15-5-2 which states:
"`A search warrant may be issued on any one of the following grounds:
"`(1) Where the property was stolen or embezzled;
"`(2) Where it was used as the means of committing a felony; or
 "`(3) Where it is in the possession of any person with the intent to use it as a means of committing a public offense or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery.'
". . . .
 "Given these guiding concepts, we conclude that the plain and unambiguous language of § 15-5-2 would not provide for the anticipatory search warrant at issue in this case. The plain language of subsection (1) and (2) of § 15-5-2, which are echoed by subsections (1) and (2) of Rule 3.8, require that the evidence to be seized be evidence of a criminal offense that has already occurred. . . ."
Ex parte Oswalt, 686 So.2d at 373. (Emphasis omitted.) This Court concluded: "[A]lthough anticipatory search warrants may be constitutional, those which fail to comply with the requirements adopted by this Court in Rule 3.8 are currently impermissible in Alabama." Id. at 374. The Oswalt Court did not address the issue of the application of the "good faith" exception to the exclusionary rule announced in United States v. Leon,468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
The State argues that, at the time the warrant in this case was issued, at least six federal circuit courts of appeals had upheld anticipatory search warrants, as had the Court of Criminal Appeals in Oswalt v. State, supra. In 1996, however, in Ex parteOswalt, supra, this Court reversed the Court of Criminal Appeals'Oswalt v. State decision. Thus, at the time the warrant to search Turner's home was issued on September 6, 1995, the Oswalt
proceeding was not final.[1] We must decide whether *Page 1145 
the Court of Criminal Appeals' decision in Oswalt v. State served as precedent for the issuance of anticipatory search warrants until we reversed it.[2]
The answer is no. The case of Grantham v. State,540 So.2d 779 (Ala. 1988), is noteworthy. Grantham, limited to its facts, held that a holding by the Court of Criminal Appeals which was never repudiated by this Court had precedential value for the particular purpose of notice to the public until the Court of Criminal Appeals decision containing that holding was reversed by this Court on other grounds. In the case before us, the holding of Oswalt v. State urged by the State as precedent was the very ground of the reversal of that decision by this Court oncertiorari review. This reversal nullified that Court of Criminal Appeals holding for all precedential purposes for the time periods both before and after the reversal.
The case of United States v. Johnson, 457 U.S. 537 (1982), is instructive on the topic of the retroactive effect of our reversal of Oswalt v. State. In Johnson, the United States Supreme Court examined the retroactivity of one of its decisions construing theFourth Amendment. That *Page 1146 
Court had, in Payton v. New York, 445 U.S. 573 (1980), held that the Fourth Amendment prohibits the police from making an entry into a suspect's home to make a routine felony arrest absent a warrant or consent. The question addressed by the Johnson Court was whether the rule announced in Payton applied to an arrest made before the Court decided Payton. The Supreme Court considered three factors. (1) Does the decision of the Court apply settled precedents to new and different factual situations? (2) Has the Court expressly declared a rule of criminal procedure to be "a clear break with the past"? (3) Did the Court's ruling immunize the defendant's conduct from punishment or serve "to prevent [his] trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of [that] trial"? Johnson,457 U.S. at 549-50. Finding that Payton fell in none of the stated categories, the Johnson Court reversed the New York Court of Appeals and remanded the cause for a new trial without the unconstitutionally obtained evidence. The Johnson Court found that "retroactive application of Payton to all previously nonfinal convictions would provide a principle of decisionmaking consonant with our original understanding of retroactivity in Linkletter [v. Walker,381 U.S. 618 (1965),] and [Tehan v. United States ex rel.] Shott, [382 U.S. 406 (1966),]" that "application of Payton to cases pending on direct review would comport with our judicial responsibilities `to do justice to each litigant on the merits of his own case,'" and application "would further the goal of treating similarly situated defendants similarly." Johnson, 457 U.S. at 554-55. The Supreme Court recognized that "[a]n approach that resolved all nonfinal convictions under the same rule of law would lessen the possibility that [the] Court might mete out different constitutional protection to defendants simultaneously subjected to identical police conduct." Id. at 556.
By adopting the criteria stated in the Johnson case, we too "treat similarly situated defendants similarly." By applying the same law to Mr. Turner and Mr. Oswalt alike, we avoid arbitrary discrimination. We likewise honor the traditional limit on judicial power, that courts have no authority to change a particular statute or provision of the constitution but only to declare what it has meant since its inception, and the last controlling decision overrides prior contrary decisions in declaring the meaning of the particular statute or provision from its inception.
We find, first, that the decision of this Court in Ex parteOswalt, supra, applied settled precedents. Second, the holding announced in Ex parte Oswalt was not "a clear break with the past." Third, this Court's ruling did not immunize the defendant's conduct from punishment or serve "to prevent [his] trial from taking place at all." Rather Ex parte Oswalt reversed the Court of Criminal Appeals' holding and judgment that all anticipatory search warrants were valid under Alabama law and remanded the cause to the Court of Criminal Appeals with instructions to remand it to the trial court for proceedings consistent with the opinion. Thus Ex parte Oswalt eliminated ab initio any and all precedential effect of Oswalt v. State.
The ultimate argument advanced by the State is that the Leon,supra, "good faith" exception to the exclusionary rule justifies the trial judge's denial of Turner's motion to suppress the marijuana as evidence. This argument should be analyzed in the context of the constitutional and legal fundamentals. *Page 1147 
The Fourth Amendment to the United States Constitution provides:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
This constitutional guarantee is applicable to the States. Mappv. Ohio, 367 U.S. 643 (1961). Further, our own constitution provides similar protection against unreasonable search and seizure:
 "That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."
Art. I, § 5, Alabama Constitution of 1901.
"There is no common law authorizing search warrants. Statutes authorizing searches are strictly construed against the prosecution [and] in favor of the liberty of the citizen." Kelleyv. State, 55 Ala. App. 402, 403, 316 So.2d 233, 234
(Ala.Crim.App. 1975). See also, Rivers v. State, 406 So.2d 1021, 1022
(Ala.Crim.App. 1981), cert. denied, 406 So.2d 1023 (Ala. 1981). At the time the search warrant was obtained in this case, September 6, 1995, there was neither statute nor rule permitting "anticipatory" search warrants.[3] Rule 3.8 authorized a search warrant to be issued "if there [was] probable cause to believe that the property sought:
"(1) Was unlawfully obtained,
 "(2) Was used as the means of committing or attempting to commit any offense under the laws of the State of Alabama or any political subdivision thereof;
 "(3) Is in the possession of any person with intent to use it as a means of committing a criminal offense, or is in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery; or
 "(4) Constitutes evidence of a criminal offense under the laws of the State of Alabama or any political subdivision thereof."
(Emphasis added.)
While no statute or rule of procedure authorized anticipatory search warrants, the State, contending that the trial court was correct in its denial of Turner's motion to suppress, argues that the good faith exception to the exclusionary rule applies because the officers reasonably relied on a warrant issued by a neutral and detached magistrate, even if the warrant ultimately be found invalid.
In this regard the State first cites the 1996 decision of the Court of Criminal Appeals in Walls v. State, supra. There the Court of Criminal Appeals acknowledged that this Court's opinion in Ex parte Oswalt required it to find that the anticipatory search warrant issued against Walls was invalid. The Court of Criminal Appeals, however, upheld the search warrant in Walls on the basis of the Leon, supra, "good faith" exception to the exclusionary rule on the rationale that the officers had relied on the warrant, which was issued at a time after the Court of Criminal Appeals had, in Oswalt v. State, held anticipatory *Page 1148 
search warrants valid in Alabama. Walls v. State was, however, as already explained, later reversed by this Court in Ex parte Walls,711 So.2d 490, opinion withdrawn and superseded on rehearing,Ex parte Walls, 711 So.2d 490 (Ala. 1997).
In support of its "good faith" argument, the State next citesEx parte Morgan, 641 So.2d 840, 843 (Ala. 1994), United States v.Leon, supra, and Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185,131 L.Ed.2d 34 (1995). All three cases cited by the State are distinguishable from the instant case in that none involve a search warrant not authorized by applicable statute or rule.
In Ex parte Morgan, supra, this Court granted certiorari review to determine whether certain evidence seized following a warrantless search was admissible. On the day Morgan was arrested, two Florida law enforcement officers, an F.B.I. agent whose office was in Florida, and an agent from the United States Customs Service, accompanied Alabama officers to the motel room where Morgan was staying. One of the Florida officers had in his possession two Florida warrants for Morgan's arrest for sexual battery. Morgan did not consent to the officer's request to enter the room and to conduct a search. Once one of the Florida officers informed Morgan that he had a warrant for his arrest, however, Morgan allowed the officers to enter the room. An officer from the Gulf Shores Police Department arrested Morgan for being a fugitive from justice based on the Florida warrants, though he did not have a fugitive-from-justice warrant as required by § 15-9-40, Ala. Code 1975. While the Alabama officers were in Morgan's motel room, they observed a number of items that had been described by Alabama victims recounting the circumstances of the offenses against them. The Alabama officers then procured a search warrant and recovered certain items of evidence. Moving to suppress the evidence found in his motel room, Morgan contended that the seizure was based on an illegal warrantless arrest. The trial court denied the motion to suppress and admitted the evidence. Morgan was convicted of kidnapping, possession of obscene material, enticement, and indecent exposure. On appeal, the Court of Criminal Appeals held that, while the warrantless arrest was invalid because the arrest did not meet the requirements of §§ 15-9-40 and 15-9-41, sufficient probable cause existed to arrest Morgan for sexual offenses occurring in Alabama and, therefore, "because the arrest was proper, the search and seizure of the incriminating evidence was legal, and the trial court correctly denied the appellant's motion to suppress."Morgan v. State, 641 So.2d 834, 838 (Ala.Crim.App. 1992). On certiorari review, this Court agreed that the arrest was invalid because it did not meet the requirements of §§ 15-9-40 and 15-9-41
in that the police had not obtained a fugitive-from-justice warrant before making the arrest, but held that the exclusionary rule was inapplicable because "[u]nder § 15-9-40, the Florida warrants, if properly authenticated, would serve as a basis for a fugitive from justice warrant" and "an objective officer could have reasonably relied upon the two Florida warrants in the possession of a Florida law enforcement official present at the arrest scene to conduct the warrantless arrest." 641 So.2d at 843. In the case at bar, the search warrant issued was fatally invalid from its inception because it was not authorized by Alabama rule or statute.
In Arizona v. Evans, supra, the United States Supreme Court limited itself to the question of whether a court employee's departure from established record keeping procedures, which caused the record of the defendant's arrest warrant to remain in the computer system after the warrant had been quashed, is the kind of error to *Page 1149 
which the exclusionary rule applies. In Evans, a Phoenix police officer observed Evans driving the wrong way on a one way street. The officer pulled Evans over and, after being told by Evans that his license had been suspended, entered Evans's name into his patrol car computer data terminal. The computer inquiry confirmed that Evans's license had been suspended and that there was an outstanding misdemeanor warrant for his arrest. The police officer placed Evans under arrest and, while the officer hand-cuffed Evans, he smelled marijuana. The officer searched Evans's car and found a bag of marijuana. In determining whether a court employee's departure from established record keeping procedures, which caused the record of the defendant's arrest warrant to remain in the computer system after the warrant had been quashed, is the kind of error to which the exclusionary rule applies, the United States Supreme Court held that such clerical errors fell within the "good faith" exception to the exclusionary rule. Turner's case is clearly distinguishable, however, because the search and seizure in Turner's case depend on an anticipatory search warrant not authorized by rule or statute when issued.
In United States v. Leon, supra, the United States Supreme Court addressed the question of "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. The search warrant issued in the Leon case was challenged by motions to suppress the evidence seized. After an evidentiary hearing, the district court found the affidavit insufficient to establish probable cause and suppressed some of the evidence as to some defendants but did not suppress all of the evidence as to all the defendants because none of the defendants had standing to challenge all the searches. The government had argued that the police officer acted in good faith and, thus, the Fourth Amendment exclusionary rule should not apply where evidence is seized with a reasonable, good faith reliance on a search warrant. The district court declined to accept that argument. On appeal, the Court of Appeals for the Ninth Circuit affirmed the district court, finding that the information in the affidavit that set forth facts to demonstrate the basis of the informant's knowledge of criminal activity, was fatally stale. The Court of Appeals also determined that the information provided by the informant was inadequate under both prongs of the two-part test of Aquilar v. Texas,378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Court of Appeals declined to recognize a good faith exception to the Fourth Amendment exclusionary rule. The United States Supreme Court, however, upon reviewing the case, opined that, in the Fourth Amendment context, the exclusionary rule could "be modified somewhat without jeopardizing its ability to perform its intended functions" and reversed the judgment of the Court of Appeals. 468 U.S. at 905.
The specific holding of Leon was that, although the search warrant was ultimately found to be unsupported by probable cause, the evidence obtained would not be excluded if the officers reasonably relied on a search warrant issued by a detached and neutral judge. Here, the issue is not one of probable cause but of an impermissible search warrant.
In Leon, the United States Supreme Court provides guidance for analyzing a *Page 1150 
suppression issue. Leon explains that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Id. at 918. In the case now before us, we must address whether evidence obtained by police officers who acted in reliance on a warrant issued in violation of statutory and procedural law must be excluded. Leon states that "[t]here is no need for courts to adopt the inflexible practice of always deciding whether the officers' conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated. . . . [C]ourts have considerable discretion in conforming their decision-making processes to the exigencies of particular cases." 468 U.S. at 924-25. "If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue." 468 U.S. at 925.
The United States Supreme Court observes in Leon that "[d]eference to the magistrate . . . is not boundless" and that "the courts must also insist that the magistrate purport to `perform his "neutral and detached" function and not serve merely as a rubber stamp for the police. . . . A magistrate failing to `manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as `an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." (Citations omitted.) Leon, 468 U.S. at 914.
The courts are duty-bound to superintend the preservation of citizens' constitutional protections. When a search warrant is issued without the authority of a constitutional statute or court rule correctly interpreted, application of the exclusionary rule is necessary to preserve the citizens' remaining protections under the Fourth Amendment to the United States Constitution and ArticleI, § 5 of the Alabama Constitution of 1901 because a motion to suppress is the only effective way to invoke the supervision of the trial courts and the appellate courts over this field of law.
The Fourth Amendment applies to the judicial as well as the executive branch. As Justice Day, speaking for the unanimous court, states in Weeks v. United States, 232 U.S. 383, 391-92, (1914), overruled on other grounds, Mapp, supra:
 "The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures . . . should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."
(Emphasis added.) In Coolidge v. New Hampshire, 403 U.S. 443, 481, *Page 1151 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court said:
 "[The warrant requirement] is not an inconvenience to be somehow `weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the `well-intentioned but mistakenly over-zealous executive officers' who are a part of any system of law enforcement."
Our state constitution too secures our citizens against unlawful search and seizure, governs the conduct of magistrates and judges, and governs the decisions of our courts with its prohibition against unlawful search and seizure and its requirement for a valid warrant.
For us to decide whether the evidence should be suppressed, the State urges this Court to use the standard stated in Ex parteCrittenden, 476 So.2d 632, 635 (Ala. 1985): "`[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" (Quoting Leon, 468 U.S. at 926.) The State observes that, in this case, there is no allegation that the magistrate abandoned his "detached and neutral role."
The magistrate, however, issued a warrant that was not, at that time, authorized by statute or court rule. At the time the warrant was issued and executed, Alabama statutory law and procedural rules neither permitted nor contemplated anticipatory search warrants.
Without the authority of the warrant, the police officers in Turner's case lacked authority to invade the privacy of his home or to conduct any search or seizure. Magistrates must heed the law of this State in issuing search warrants. The district judge who issued this warrant was bound by the strictures of the law. The trial court had the obligation, during the suppression hearing, to determine whether any Alabama statute or rule of procedure authorized anticipatory search warrants. The appellate courts, including this one, are duty-bound to preserve the rule of law in the issuance of search warrants. Suppression of evidence seized pursuant to a search warrant issued contrary to the rule of law is necessary to preserve the rule of law itself. Therefore we hold that the trial court erred in denying Turner's motion to suppress.
For the reasons stated, the judgment of the Court of Criminal Appeals is reversed and the cause remanded with instructions for the Court of Criminal Appeals to remand it to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Cook, Lyons, and England, JJ., concur.
See, J., concurs specially.
Maddox and Houston, JJ., dissent.
Brown, J., recuses herself.**
** Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.
[1] By "final" we mean that the proceedings on direct review have been completed or the time has elapsed for review by the Alabama state courts. See, for example, United States v. Johnson,457 U.S. 537, 542 n. 8 (1982) ("By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied, . . .]. . . .").
[2] The following chart shows the sequence of the events in Turner's case and the release dates of the various judgments by the Court of Criminal Appeals and this Court discussed in this opinion:
September 9, 1994 Court of Criminal Appeals issues opinion in Oswalt v. State, 686 So.2d 361
(Ala.Crim.App. 1994), finding "anticipatory search warrants" valid.
September 6, 1995 "Anticipatory search warrant" issued against Michael Turner, a "controlled delivery" made, marijuana seized and Turner arrested.
May 24, 1996 Supreme Court of Alabama releases Ex parte Oswalt, 686 So.2d 368 (Ala. 1996), finding "although anticipatory search warrants may be constitutional, those which fail to comply with the requirements adopted by this Court in Rule 3.8 are currently impermissible in Alabama." 686 So.2d at 373. The judgment of the Court of Criminal Appeals in Oswalt is reversed "based on the court's ruling that all anticipatory search warrants are valid under Alabama law" and the cause is remanded. 686 So.2d at 374.
October 11, 1996 Court of Criminal Appeals releases Walls v. State, acknowledging the holding in Ex parte Oswalt, but finding the search warrant in Walls fell within the "good faith exception" because the police officers were relying on the Court of Criminal Appeals' decision in Oswalt v. State.
April 23, 1997 Trial court denies Michael Turner's motion to suppress, finding that officers acted in "good faith" in relying on the search warrant issued by a "neutral and detached magistrate" and that "exigency of circumstances" permitted a warrantless search of premises.
April 23-24, 1997 Turner is tried and convicted.
August 7, 1997 Supreme Court of Alabama releases the first version of Ex parte Walls, [Ms. 1960352], holding that "[w]hen the warrant in this case [Walls] was executed, Alabama case law [Oswalt v. State] specifically held that such search warrants were authorized."
November 14, 1997 Court of Criminal Appeals releases its opinion in this case [Turner v. State] finding that police officers relied on a facially valid warrant.
November 14, 1997 Supreme Court of Alabama, on rehearing of Ex parte Walls, reverses and renders judgment in favor of Walls. The issue of anticipatory search warrants is not discussed in this opinion, which withdraws this Court's earlier opinion in Walls's case in which it did discuss anticipatory search warrants. 711 So.2d 490 (Ala. 1997).
March 6, 1998 The Court of Criminal Appeals substitutes a new opinion in Turner v. State, which continues to uphold the search by relying on Oswalt v. State on the rationale that Ex parte Oswalt, which reversed Oswalt v. State, is not applicable to Turner's case because the search warrant issued against Turner was executed approximately 9 months before Ex parte Oswalt was released.
[3] We note that Rules 3.7 and 3.8, Ala.R.Crim.P., were amended, effective December 1, 1997, to permit anticipatory search warrants. See, Committee Comments to Rules 3.7 and 3.8.